**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHRISTOPHER A. HALL, a/k/a C,

*Defendant-Appellant.*

No. 07-4067

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WILLIAM L. HANDY, JR., a/k/a B,

*Defendant-Appellant.*

No. 07-4070

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHRISTOPHER A. HALL, a/k/a C,

*Defendant-Appellant.*

No. 07-4397

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

        v.

WILLIAM L. HANDY, JR., a/k/a B,

        *Defendant-Appellant.*

No. 07-4398

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(8:04-cr-00559-AW)

Argued: September 26, 2008

Decided: January 8, 2009

Before KING, SHEDD, and AGEE, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Shedd and Judge Agee joined.

**COUNSEL**

**ARGUED:** Steven Gene Berry, Rockville, Maryland, for Appellants. Sandra Wilkinson, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Martin H. Schreiber II, Baltimore, Maryland, for Appellant Christopher A. Hall. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

**OPINION**

KING, Circuit Judge:

Christopher A. Hall and William L. Handy, Jr. (together, the "Defendants") appeal from their convictions in the District of Maryland on multiple offenses arising from a drug trafficking scheme. The Defendants' convictions resulted from their second trial in Maryland, following a hung-jury mistrial in that district and two earlier mistrials of related prosecutions in the District of Columbia. By their appeals,[1] the Defendants present multiple constitutional issues, maintaining that their convictions contravened the Double Jeopardy Clause of the Fifth Amendment; violated the speedy trial guarantees of the Sixth Amendment; and constituted cruel and unusual punishment under the Eighth Amendment. Finally, they claim that the cumulative prejudice resulting from their multiple prosecutions contravened the Due Process Clause of the Fifth Amendment. As explained below, we reject these contentions and affirm.

I.

A.

The convictions of the Defendants stem from a complex drug trafficking scheme culminating in the seizure of over thirty-three kilograms of cocaine from the hidden compartment of a Toyota van apprehended by the authorities on April

---

[1]There are four consolidated appeals considered and disposed of herein, including two interlocutory appeals (Nos. 07-4067 and 07-4070) filed by the Defendants — prior to their second trial in Maryland — concerning the pretrial rejection of their constitutional claims. The government sought dismissal of both appeals as premature, but the Defendants were convicted and sentenced before the dismissal motions were ruled upon. The Defendants thereafter filed timely appeals (Nos. 07-4397 and 07-4398) from final judgments entered against them in the District of Maryland. We have consolidated the four appeals for briefing, argument, and disposition.

11, 2001, near Frederick, Maryland. Various indictments were returned in the District of Columbia and Maryland following this seizure and several related events, with the charges implicating multiple conspirators. Under the evidence, the conspirators had secured large quantities of drugs on the west coast of the United States, and schemed to transport them in hidden compartments of vehicles to the east coast for distribution. A conspirator named Taylor, who was indicted and prosecuted in the District of Columbia, initially supplied the Defendants with such drugs on a consignment basis. The Defendants subsequently transitioned to a different supplier, purchased and outfitted the Toyota van with a hidden compartment, and arranged for the transportation of substantial quantities of illegal drugs from California to the east coast. After the Frederick, Maryland cocaine seizure in April 2001, the Defendants were arrested and, as explained below, prosecuted in several protracted and procedurally complex proceedings in the District of Columbia and Maryland.

### B.

On April 24, 2001, the Defendants were first charged in these proceedings, by way of a one-count 21 U.S.C. § 846 conspiracy indictment in the District of Columbia, which was dismissed before trial. The Defendants were ultimately charged in a five-count superseding indictment returned on August 20, 2002, also in the District of Columbia.[2] This indictment alleged that the Defendants and several coconspirators were involved in a drug trafficking scheme, and charged them with a single conspiracy offense and several related substantive offenses.[3] More specifically, they were

---

[2]More specifically, after the April 24, 2001 indictment was dismissed, the Defendants were indicted on July 23, 2002. The July 23, 2002 indictment was then followed by two superseding indictments, both returned on August 20, 2002. The Defendants were first tried in the District of Columbia on the second August 20, 2002 indictment.

[3]The conspiracy charge in the District of Columbia implicated the Defendants and three named coconspirators, Auston, Robinson, and Taylor. This conspiracy encompassed the period from November 1999 until August 2001, and included illicit conduct in the District of Columbia and other locations from California to Maryland.

charged with conspiracy to distribute cocaine and crack, in violation of § 846 (Count One); involvement in a continuing criminal enterprise, in contravention of 21 U.S.C. § 848(b) (Count Two); possession with intent to distribute cocaine, in contravention of 21 U.S.C. § 841(a)(1) (Count Three); and possession with intent to distribute cocaine near a school, in violation of 21 U.S.C. § 860(a) (Count Four). In addition, Hall was charged with possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count Five).

The Defendants pleaded not guilty to the August 20, 2002 indictment, and their trial began on January 8, 2003. On April 22, 2003, after the presentation of evidence, the trial court granted Hall's motion for judgment of acquittal on the firearms offense contained in Count Five (the "Firearm Offense Acquittal"). On May 29, 2003, after ascertaining that the jury was deadlocked, the court declared a mistrial on the other four counts.

On November 20, 2003, six months after the initial mistrial, an eight-count superseding indictment was returned in the District of Columbia, again charging the Defendants with the § 846 conspiracy (Count One), the § 848 continuing criminal enterprise offense (Count Two), the § 841(a)(1) offense of possession with intent to distribute cocaine (Count Six), and the § 860(a) offense of possession with intent to distribute cocaine near a school (Count Seven).[4] This indictment preferred three additional § 841(a)(1) charges against the Defendants for possession with intent to distribute cocaine (Counts Three, Four, and Five), plus a single charge for maintenance of a premises for the manufacture of a controlled substance, in violation of 21 U.S.C. § 856(a)(2) (Count Eight).

---

[4]The November 20, 2003 superseding indictment in the District of Columbia named the same codefendants as the August 20, 2002 indictment.

On February 4, 2004, the November 20, 2003 indictment went to trial in the District of Columbia and, on June 2, 2004, the trial court granted the Defendants a judgment of acquittal on Count Eight (the "Premises Offense Acquittal"). By two partial verdicts, returned on June 28 and 30, 2004, the jury acquitted the Defendants of the charges contained in Counts Four, Five, and Seven (the "Distribution Offense Acquittals"). On July 9, 2004, as a result of the jury's inability to reach a verdict on the remaining four counts, the court declared a mistrial on Counts One, Two, Three, and Six. On September 3, 2004, the balance of the November 20, 2003 indictment was dismissed at the request of the prosecution.

## C.

After the two mistrials in the District of Columbia in 2003 and 2004, the venue for prosecution moved to the District of Maryland. Ultimately, five related indictments were returned in Maryland, and the Defendants were charged in the last four of them. They were tried twice in Maryland — on the fourth and fifth indictments — in 2006 and 2007. We explain further below.

On February 24, 2005, the Defendants were first indicted in the District of Maryland (in the second Maryland indictment in these proceedings), and initially charged only with being involved in a 21 U.S.C. § 846 conspiracy to distribute cocaine and crack. After a reindictment of the Defendants, again charging them only with the § 846 conspiracy, they were charged in another indictment, returned on January 25, 2006, with the § 846 conspiracy, plus four substantive offenses (the "Fourth Maryland Indictment").[5] More specifi-

---

[5]The Fourth Maryland Indictment charged the Defendants and four coconspirators, Briscoe, Kelly, Ray, and Belt — none of whom had been previously charged in the District of Columbia — with conspiring in a drug trafficking scheme in Maryland and the District of Columbia, from approximately November 2000 until December 2004.

cally, the Defendants were charged with conspiracy to distribute cocaine and crack, in violation of § 846 (Count One); using a communications facility in the commission of a felony, in contravention of 21 U.S.C. § 843(b) (Count Four); and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Five). Counts Two and Three charged Handy with using a communications facility in the commission of a felony on two separate occasions, also in violation of § 843(b).

The Defendants sought dismissal of the Fourth Maryland Indictment on the bases of double jeopardy, collateral estoppel, and prosecutorial misconduct. By Memorandum Opinion of March 21, 2006, however, the district court rejected those assertions, and the Defendants' first Maryland trial commenced soon thereafter. *See United States v. Briscoe*, No. 8:04-cr-00559 (D. Md. Mar. 21, 2006) (the "Opinion").[6] On May 9, 2006, because the jury in that trial was unable to reach a verdict, a mistrial was declared.

On June 21, 2006, the grand jury in Maryland charged the Defendants in yet another superseding indictment (the "Fifth Maryland Indictment"), realleging the charges contained in Counts One through Five of the Fourth Maryland Indictment. The Defendants then filed another series of motions, through counsel as well as pro se, seeking to dismiss the Fifth Maryland Indictment and asserting violations of various constitutional guarantees, including the Double Jeopardy Clause. Hall also filed a pro se motion seeking the discharge of his counsel, and Handy's lawyer sought to withdraw from further representation of his client. On January 4, 2007, the district court conducted a hearing on these requests, authorized the Defendants to proceed to trial on a pro se basis, and denied their motions to dismiss.

---

[6]The Opinion is found in the Joint Appendix at 205-14.

The Defendants' trial on the Fifth Maryland Indictment began on January 23, 2007. It ended a week later, when the jury returned a verdict of guilty against the Defendants on Counts One, Four, and Five, and against Handy alone on Counts Two and Three. After unsuccessfully pursuing post-trial challenges to their convictions, Handy was sentenced to 360 months of imprisonment, while Hall received a sentence of 300 months.[7] The Defendants have timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a properly preserved constitutional claim. *See, e.g.*, *United States v. Goodine*, 400 F.3d 202, 206 (4th Cir. 2005).

## III.

On appeal, the Defendants challenge their convictions on multiple constitutional grounds, specifically double jeopardy, lack of a speedy trial, cruel and unusual punishment, and denial of due process. We assess their contentions in turn.

## A.

The Defendants' primary claim — double jeopardy — has three prongs: that the proceedings in Maryland subjected them to successive prosecutions for the same offense; that the doctrine of collateral estoppel barred their prosecutions on the 21 U.S.C. § 846 conspiracy charged in Count One of the Fifth Maryland Indictment; and that, in these circumstances, their multiple trials and prosecutions constitute a double jeopardy violation. We begin our assessment with the successive prosecution prong of the double jeopardy claim.

---

[7]According to the Defendants, they were incarcerated throughout the pendency of the District of Columbia prosecutions. As of March 23, 2005, they were released on house arrest in Maryland until January 30, 2007, when they were convicted in the trial underlying this appeal.

1.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This constitutional guarantee has two distinct components, applying "both to successive punishments and to successive prosecutions for the same criminal offense." *United States v. Dixon*, 509 U.S. 688, 696 (1993). Both of these double jeopardy components serve "a constitutional policy of finality for the defendant's benefit," by ensuring against attempts to impose "more than one punishment for the same offense" or additional punishment after a prior conviction or acquittal. *See Brown v. Ohio*, 432 U.S. 161, 165-66 (1977).

The Defendants allege that their convictions on the charges in the Fifth Maryland Indictment, following the three mistrials in the District of Columbia and Maryland, subjected them to successive prosecutions for the same criminal offense. In these circumstances, we assess their double jeopardy claims under the same-element test established by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See Dixon*, 509 U.S. at 696-97. Under the *Blockburger* analysis, successive prosecutions do not violate the Double Jeopardy Clause if "each offense contains an element not contained in the other." *Id.* at 696.

The Defendants acknowledge on appeal that the Clause's protection against successive prosecutions for the same offense only bars a subsequent prosecution if an earlier prosecution for the same offense was terminated by acquittal or conviction. The Defendants' convictions in their second Maryland trial (on the Fifth Maryland Indictment), and their earlier acquittals in the District of Columbia, constitute the relevant convictions and acquittals for the double jeopardy

inquiry we must conduct. The Defendants' acquittals (together, the "Acquitted Offenses"), were as follows:[8]

- The Firearm Offense Acquittal in the first District of Columbia trial, where Hall was charged with violating 18 U.S.C. § 924(c)(1) for possession of a firearm in furtherance of a drug trafficking offense on April 11, 2001, in the District of Columbia;[9]

- Two of the Distribution Offense Acquittals in the second District of Columbia trial, where the Defendants were charged with violating 21 U.S.C. § 841(a)(1) for possession with intent to distribute cocaine on two occasions (December 13, 2000, and February 15, 2001) in the District of Columbia;[10]

- The third Distribution Offense Acquittal in the second District of Columbia trial, where the Defendants were charged with violating 21 U.S.C. § 860(a) for possession with intent to dis-

---

[8]The Acquitted Offenses include, as explained further below, five acquittals for Hall and four acquittals for Handy.

[9]Pursuant to § 924(c) of Title 18, an accused who "in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," has committed a separate offense. Such an offense has two elements: (1) that the defendant actively used or carried a firearm; and (2) that such act occurs during and in relation to the commission of a drug trafficking crime. *See United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997).

[10]Pursuant to § 841(a)(1) of Title 21, "it shall be unlawful for any person knowingly or intentionally . . . distribute . . . or possess with intent to . . . distribute . . . a controlled substance." The essential elements of such a distribution offense are (1) possession of the controlled substance; (2) knowledge of the possession; and (3) intent to distribute. *See United States v. Crockett*, 813 F.2d 1310, 1316 (4th Cir. 1987).

tribute cocaine near a school on March 5, 2001, in the District of Columbia;[11] and

- The Premises Offense Acquittal in the second District of Columbia trial, where the Defendants were charged with violating 21 U.S.C. § 856(a)(2) for unlawful maintenance of a premises for the manufacture of a controlled substance on April 11, 2001, in the District of Columbia.[12]

On January 30, 2007, the Defendants were convicted in the District of Maryland of the following offenses (together, the "Convicted Offenses"), as alleged in the Fifth Maryland Indictment:

- Count One, which charged the Defendants with a 21 U.S.C. § 846 conspiracy to violate 21 U.S.C. § 841(a)(1), from the fall of 2000 through April 2001, in Maryland, California, the District of Columbia, and elsewhere;[13]

- Counts Two and Three, which charged Handy with violations of 21 U.S.C. § 843(b) for use of

---

[11]Section 860(a) of Title 21 authorizes an enhanced punishment for those persons who commit a 21 U.S.C. § 841 distribution offense within 1,000 feet of a school.

[12]Pursuant to § 856(a)(2) of Title 21, "it shall be unlawful to . . . manage or control any place . . . for the purpose of unlawfully manufacturing . . . a controlled substance."

[13]Section 846 of Title 21 provides that "[a]ny person who . . . conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for . . . the object of the . . . conspiracy." The essential elements of a § 846 conspiracy are (1) an agreement between two or more persons to violate federal law relating to controlled substances; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement therein; and (4) interdependence among the conspirators. *See United States v. Stewart*, 256 F.3d 231, 250 (4th Cir. 2001).

a cellular telephone in the commission of a felony on two occasions on April 11, 2001, specifically at 3:17 p.m. and 5:16 p.m., in Maryland;[14]

- Count Four, which charged the Defendants with a violation of § 843(b) for use of a cellular telephone in the commission of a felony on April 11, 2001, specifically at 5:36 p.m., in Maryland; and

- Count Five, which charged the Defendants with a violation of § 841(a)(1) for possession with intent to distribute cocaine on April 11, 2001, in the District of Maryland.

In the context of the foregoing, we must assess whether any of the Convicted Offenses are barred under the Double Jeopardy Clause.

First, we assess whether the Defendants' § 846 conspiracy convictions are barred under the applicable double jeopardy principles. We readily conclude they are not barred, because, put most simply, the conspiracy offenses previously charged and mistried in the District of Columbia and Maryland do not implicate a double jeopardy analysis. *Richardson v. United States*, 468 U.S. 317, 324 (1984) ("[W]e have constantly adhered to the rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause."); *United States v. Goodine*, 400 F.3d 202, 206 (4th Cir. 2005) (recognizing foregoing rule as "well-settled"). Thus, even if the § 846 conspiracy offense was twice mistried in the District of Columbia and once mistried in Maryland, and then recharged and tried again as Count One of the Fifth Maryland Indictment, there is no double jeopardy violation.[15] Accordingly, any evidence

---

[14]Under § 843(b) of Title 21, it is unlawful for any person to knowingly "use any communication facility in . . . the commission of . . . a [drug] felony."

[15]As the district court recognized, and notwithstanding the Defendants' contention to the contrary, the prosecution was entitled to introduce overt

in the second Maryland trial that related to the Acquitted Charges did not present a double jeopardy problem on prosecution of the conspiracy offense in the Fifth Maryland Indictment.

The Defendants' convictions on Counts Two, Three, and Four of the Fifth Maryland Indictment involved offenses under § 843(b) of Title 21 (using a communication facility in the commission of a felony). Put simply, no such offenses were ever charged or pursued against the Defendants in the District of Columbia, and those three offenses are distinct from any of the Acquitted Offenses because they required proof of a distinct element — use of a communication facility in the commission of a felony.

Finally, the Defendants were each convicted on Count Five of the Fifth Maryland Indictment, which charged possession with intent to distribute cocaine on April 11, 2001, in the District of Maryland, in violation of 21 U.S.C. § 841(a)(1). The double jeopardy issue on this charge is somewhat more complex, in that the three Distribution Offense Acquittals involved similar offenses. These acquittals related, however, to conduct of the Defendants in the District of Columbia in December 2000, February 2001, and March 2001, well before the Count Five distribution offense had occurred in Maryland. The district court carefully considered this contention, and properly recognized that "the three acquitted counts of possession with intent to distribute concerned discrete shipments of cocaine that the defendants allegedly received weeks before the cocaine delivery charged in the present indictment." Opinion 4. The Defendants emphasize, of course, in pursuing their

act evidence on the conspiracy charge that related to the Acquitted Offenses. *See* Opinion 4 (citing *United States v. Banks*, 10 F.3d 1044, 1050 (4th Cir. 1993) ("because overt acts are not elements of a § 846 [drug-related] conspiracy, they cannot be considered the 'same offense' for double jeopardy purposes")).

double jeopardy contention on Count Five, that the Firearm Offense Acquittal and the Premises Offense Acquittal each involved conduct occurring on April 11, 2001. Those two offenses, however, implicate distinct statutes and elements from § 841(a)(1). As a result, the Double Jeopardy Clause does not bar any of the Defendants' convictions in Maryland, and this aspect of their double jeopardy claim must be rejected.

2.

In connection with their double jeopardy contention, the Defendants alternatively maintain that the doctrine of collateral estoppel foreclosed their prosecutions in Maryland on the § 846 conspiracy charged in Count One, because the evidence offered in support of that offense was also "relevant" to the Acquitted Offenses. Collateral estoppel, when used in the criminal context, has been recognized as an aspect of the Fifth Amendment's guarantee against double jeopardy. *See United States v. Benkahla*, 530 F.3d 300, 306 (4th Cir. 2008). In that respect, it "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).

A party relying on collateral estoppel has the burden of establishing that the issue sought to be foreclosed was "necessarily determined" in some prior proceeding. *United States v. Ragins*, 840 F.2d 1184, 1194 (4th Cir. 1988). In order to properly assess whether an issue was necessarily determined in an earlier proceeding,

> a court must conduct a careful examination of "the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter," in order to decide "whether a rational jury could have grounded its verdict upon an issue other

than that which the defendant seeks to foreclose
from consideration."

*Id.* (quoting *Ashe*, 397 U.S. at 444). If the issue was necessarily determined in the defendant's favor, that determination may bar a subsequent prosecution. In the alternative, such a determination may foreclose the relitigation of specific issues of fact. *Id.*

In order to satisfy their burden in this regard, the Defendants were thus required to demonstrate that some element of their § 846 conspiracy offense was necessarily determined in their favor in an earlier proceeding. Because they had never been previously acquitted of a § 846 conspiracy offense, and because there were no facts necessarily determined in the Acquitted Offenses that would undermine the § 846 conspiracy convictions, the Defendants cannot satisfy their collateral estoppel burden. As a result, collateral estoppel does not bar their prosecution and conviction on the § 846 conspiracy offense of the Fifth Maryland Indictment.

3.

Finally, in connection to the double jeopardy issue, the Defendants maintain that they have "suffered a violation of their double jeopardy guarantee both because of the number of times they were tried and because of the extended duration of the proceedings against them." Br. of Appellants 14. Although they concede that, as a general proposition, "a mistrial constitutes no bar to further proceedings," the Defendants nevertheless suggest that we should conclude that, in these circumstances, their "multiple mistrials in succession should constitute a bar to further proceedings." *Id.* (citing *United States v. Perez*, 22 U.S. (9 Wheat.) 579 (1824) (explaining that trial court possesses discretion to discharge jury for mani-

fest necessity or when ends of justice would otherwise be defeated)).**[16]**

Unfortunately for the Defendants, we rejected such a contention in *United States v. Ndame*, 87 F.3d 114 (4th Cir. 1996), and that precedent is controlling. We concluded that the Double Jeopardy Clause did not bar Ndame's third prosecution, emphasizing that he "did not object to either declaration of mistrial" and that "[b]oth mistrials were declared because juries could not reach a unanimous verdict." *Id.* at 115. The Defendants do not assert that they objected to any of the earlier mistrials, and each mistrial was declared because of the jury's inability to reach a verdict. As in *Ndame*, these earlier mistrials fail to trigger double jeopardy concerns, and we decline to entertain the suggestion that, at some point, multiple retrials (following mistrials that were not objected to) could present a double jeopardy bar. Although the Defendants claim that the circumstances of their prosecution are distinguishable from *Ndame*, primarily because they were convicted after three mistrials rather than two, we must disagree. As Judge Widener explained in *Ndame*, "'a mechanical rule prohibiting retrial whenever circumstances compel the discharge of a jury without the defendant's consent would be too high a price to pay for the added assurance of personal security and freedom from governmental harassment which such a mechanical rule would provide.'" *Id.* (quoting *United States*

---

**[16]**The Defendants suggest that, although the controlling principles on the Double Jeopardy Clause were not contravened in these circumstances, a "breaking point" must exist where a retrial no longer satisfies *Perez*. Br. of Appellants 14 (citing *United States v. Gunter*, 546 F.2d 861, 866 (10th Cir. 1976)). The Defendants assert that such a breaking point was surpassed with their fourth trial. Although the *Gunter* court appeared to believe that a breaking point may eventually arise, it concluded that, when a jury has been properly discharged under *Perez*, the defendant may yet again be tried without offending the Fifth Amendment. *Gunter*, 546 F.2d at 865-66. We need not opine on whether a breaking point could arise in some circumstances, because the Constitution was plainly not contravened here.

*v. Jorn*, 400 U.S. 470, 480 (1971)). In sum, we reject all aspects of the Defendants' double jeopardy claim.

B.

The Defendants next maintain that there was an inordinate period of delay between their first indictment in the District of Columbia, on April 24, 2001, and their second trial in Maryland, which began on January 23, 2007, and that such a delay violated their Sixth Amendment right to a speedy trial.[17] In order to properly assess whether a pretrial delay contravenes the Constitution's speedy trial guarantee, Supreme Court precedent requires the balancing of four considerations: (1) the length of delay; (2) the reasons therefor; (3) the timeliness and vigor of the assertion of the speedy trial guarantee; and (4) prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). To prevail on their speedy trial claim, the Defendants are obliged, under *Barker*, to establish "that on balance, [the] four separate factors weigh in his favor." *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995). In applying the *Barker* test here, however, it is apparent that the Sixth Amendment was not contravened.

As the Supreme Court has explained, the first *Barker* factor involves two aspects. *See Doggett v. United States*, 505 U.S. 647, 651-52 (1992). First of all, a reviewing court must decide whether the length of the delay triggers a speedy trial inquiry. In that respect, the Court has suggested that we should conduct a full inquiry when such a delay approaches one year. *See id.* at 651-52 & n.1. Second, a reviewing court must weigh "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652.

---

[17]The Sixth Amendment guarantees that an "accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Defendants also seek to raise, in passing, a contention that this delay violated the Speedy Trial Act. *See* 18 U.S.C. § 3161-3174. There was no such violation.

As a threshold matter, we must identify the pertinent period of delay in this case. The Defendants suggest that the relevant period was "nearly six years," presumably arguing that it began on April 24, 2001, when they were first indicted in the District of Columbia. The more appropriate period of relevant delay, however, is from the Defendants' first indictment in Maryland (February 25, 2005), until their second trial there (January 23, 2007). *See United States v. MacDonald*, 456 U.S. 1, 7 (1982) ("[T]he Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges."). By definition, the constitutional right to a speedy trial is triggered by an indictment; it does not protect a defendant from a pre-indictment delay. As the Court has explained, "[t]he law has provided other mechanisms to guard against possible as distinguished from actual prejudice resulting from the passage of time between crime and arrest or charge." *United States v. Marion*, 404 U.S. 307, 322 (1971); *see also MacDonald*, 456 U.S. at 8 ("The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations.").[18]

In these circumstances, the two-year period of delay in Maryland justifies a further speedy trial analysis. The Defendants were first indicted in Maryland on February 24, 2005, and were tried and convicted on the Fifth Maryland Indict-

---

[18]We assess the Defendants' Sixth Amendment speedy trial claim by focusing on the two-year delay following their initial indictment in Maryland. The period of alleged delay in the District of Columbia — before the Defendants' initial indictment in Maryland — is more appropriately analyzed under the Fifth Amendment's Due Process Clause. In order to demonstrate that the earlier delay — or the aggregate delay — violated due process, either actual prejudice to the Defendants or intentional government misconduct must be shown. *See United States v. Marion*, 404 U.S. 307, 324-25 (1971). As explained above, the Defendants have failed to allege either prejudice or misconduct, and to the extent they challenge either the earlier delay or the aggregate delay, that claim also fails.

ment. Their trial, which was their second in the District of Maryland, began on January 23, 2007, nearly two years after their first Maryland indictment. We thus must assess the other *Barker* factors, seeking to determine whether there has been a constitutional deprivation.

The second *Barker* factor, the reasons for the trial delay, is necessarily related to a proper assessment of the period of delay. The reasons for a trial delay should be characterized as either valid, improper, or neutral. *See United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998). On this factor, a reviewing court must carefully examine several issues, specifically focusing on the intent of the prosecution. *See Barker*, 407 U.S. at 531. For example, a deliberate attempt by the prosecution to delay the trial of an accused would weigh heavily against the government, although a valid reason for delay, such as a missing witness, may be justified. *Id.* There were at least three valid bases for the two-year delay in Maryland: the prosecution was complicated, involving a serious, complex conspiracy charge that implicated multiple parties in at least two jurisdictions; pre-trial proceedings largely resulting from defense motions; and the first Maryland mistrial. Each of these factors, rather than prosecutorial misconduct or bad intent on the part of the government, contributed to the delay. In these circumstances, the reasons for the two-year delay in Maryland are a "neutral" factor with respect to the speedy trial issue.

The third *Barker* factor is whether the Defendants made a timely assertion of their speedy trial rights. A "defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether [he] is being deprived of the right." *Barker*, 407 U.S. at 531-32. In this regard, the government concedes that the Defendants "summarily asserted their speedy trial rights at their initial appearance." Br. of Appellee 33. In such circumstances, the third *Barker* factor weighs in the Defendants' favor.

Finally, the fourth *Barker* factor — prejudice — weighs against the Defendants because they have failed to show the delay may have adversely impacted the defense. On this point, the Supreme Court has identified three defense interests for consideration: (1) whether there was an oppressive pretrial incarceration; (2) the anxiety and concern suffered by the accused; and (3) the possibility that the defense was impaired. *See Barker*, 407 U.S. at 532. The Defendants contend that, when awaiting trial, they were subjected to an oppressive four-year pretrial incarceration, plus eighteen months of pretrial house arrest during the Maryland proceedings. Of significance, their incarceration occurred during the time of their prosecution in the District of Columbia. On the second defense interest specified by *Barker*, the Defendants are unable to identify "any restraint on liberty, disruption of employment, strain on financial resources, [or] exposure to public obloquy" that was greater than that faced by "anyone openly subject to criminal investigation." *MacDonald*, 456 U.S. at 9. The first two aspects of Barker's prejudice prong are thus not sufficiently controlling, and our analysis of possible prejudice must focus on whether the two-year delay impaired the defense.

Of the three defense interests identified in *Barker*, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. Again, the Defendants are unable to point to any evidence that their defense was impaired by the delay. Indeed, they have not identified any witnesses that were unavailable as a result of the delay; they have not shown that any witness was unable to accurately recall the relevant events; they do not contend that exculpatory evidence was lost; nor have they identified any evidence that was rendered unavailable by the delay. *See Grimmond*, 137 F.3d at 830. In sum, the Defendants simply argue generally that they were prejudiced by delay. In such circumstances, the final *Barker* factor weighs substantially in favor of the prosecution. Having carefully applied the *Barker* prin-

ciples to the Defendants' speedy trial claim, it is apparent that their constitutional right to a speedy trial was not contravened.

## C.

Finally, the Defendants assert that subjecting them to a fourth trial, after three mistrials to which they did not object, violated the principle of fundamental fairness inherent in Fifth Amendment due process. The Defendants contend that, "even if they failed to meet exactly their burden" on their other constitutional claims, the district court "should have found that the question was close" and "should have considered whether all of these claims, as bundled together, amounted to a violation of [the Defendants'] right to due process and fundamental fairness guaranteed by the United States Constitution." Br. of Appellants 29. Put simply, however, there is no authority for the proposition that a bundling of constitutional guarantees should be recognized as a basis for some due process right not otherwise available. There was no error committed by the district court in this context, and such a due process claim must also be rejected.[19]

---

[19]The Defendants also seek to pursue an Eighth Amendment claim, asserting summarily that their periods of pretrial incarceration and house arrest constituted cruel and unusual punishment. The Eighth Amendment has no application here, however, because the Defendants were pretrial detainees rather than convicted prisoners. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 247 n.3 (4th Cir. 2005) (assessing pretrial treatment and conditions under Due Process Clause). As pretrial detainees, the Defendants' due process rights entitled them to protection from punishment. *See Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (explaining punishment includes conditions "imposed with an expressed intent to punish" or "not reasonably related to a legitimate nonpunitive governmental objective"). Importantly, the Defendants have neither alleged nor shown any punitive bases for their pretrial detentions or restrictions in the District of Columbia and Maryland. As a result, this assertion also lacks merit.

## IV.

Pursuant to the foregoing, we affirm the Defendants' convictions.

*AFFIRMED*