GREGORY, Circuit Judge,
dissenting:
The majority upholds the automatic sealing of vital court documents that pertain to important national issues and often remain secret for years. Consequently, we may never know what wasteful spending and fraud against the public fisc persists because of government delay, inaction, or under-enforcement of the False Claims Act (FCA). I respectfully dissent because transparency remains central to combating waste and fraud, because 31 U.S.C. § 3730(b)(2)-(3) is facially unconstitutional, and because the Government fails to justify its First Amendment infringement with compelling interests and narrow tailoring. In turn, I address the history, text, and constitutionality of section 3730(b)(2)-(3).
I.
For 123 years, the FCA relied on public citizens to help fight fraud without restricting freedom of speech. Compare An Act to Prevent and Punish Frauds upon the Government of the United States, 12 Stat. 696 (1863) (original enactment) with False Claims Amendments Act of 1986, 100 Stat. 3153 (1986) (seal amendments). At oral argument, the Government agreed that the law operated for more than 120 years without mandatorily closing the record. Passed in response to “the fraudulent use of government funds during the Civil War,” United States v. Neifert-White Co., 390 U.S. 228, 232, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968), the original FCA leg *259 islation specified that “suit may be brought and carried on by any person, as well for himself as for the United States.” 12 Stat. at 698 (emphasis added). This clause is known as the qui tam provision. Senator Jacob Howard, the bill’s sponsor and floor manager, explained that the provision was “based ... upon the old-fashion idea of holding] out a temptation, and ‘setting a rogue to catch a rogue,’ which is the safest and most expeditious way I have ever discovered of bringing rogues to justice.” 33 Cong. Globe 955-56 (1863) (remarks of Sen. Howard) (emphasis added), quoted in Charles Doyle, Congressional Research Service Report for Congress, Qui Tam: The False Claims Act and Related Federal Statutes 5 (2009). By utilizing members of the public to identify fraud, the FCA’s qui tam provisions have comprised 80% of FCA cases in 2010 and recovered more than $18 billion in the last twenty-three years. Department of Justice, False Claims Act Statistics 2 (Nov. 23, 2010), quoted in op. 251 n. 4.
The FCA’s legacy of transparency comports with the fact “that historically both civil and criminal trials have been presumptively open.” Richmond Newspapers v. Va., 448 U.S. 555, 580 n. 17, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (Burger, C.J.) (plurality opinion). “From [ ] early times, although great changes in courts and procedure took place, one thing remained constant: the public character of the trial....” Id. at 566, 100 S.Ct. 2814. “This is no quirk of history; rather, it has long been recognized as an indispensable attribute of an Anglo-American trial,” promoting virtues such as fairness, truthfulness, decorum, objectivity, and legitimacy. Id. at 569, 100 S.Ct. 2814. “[O]pen justice” constitutes a “keystone” of our judicial system, since “‘[without publicity, all other checks [and balances] are insufficient....’” Id. at 569, 100 S.Ct. 2814 (citing 1 J. Bentham, Rationale of Judicial Evidence 524 (1827)).
II.
In that light, it is rather puzzling that the FCA was amended in 1986 to automatically seal all complaints. The pertinent portion of the FCA now reads as follows:
(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.
(3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.
31 U.S.C. § 3730(b) (emphasis added) (hereafter, “section 3730(b)(2)-(3)” or “the seal provision”).
Appellant seeks to maintain the longstanding tradition of ‘open justice’ as it applies to the FCA. Specifically, Appellant lodges a facial attack against section 3730(b)(2)-(3), and claims that statute vio *260 lates the First Amendment. “To succeed in a typical facial attack,” litigants must “establish ‘that no set of circumstances exists under which [the law] would be valid.’ ” United States v. Stevens, — U.S. -, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010) (citations omitted). While relaxed standards apply to First Amendment claims that a statute is overbroad, the majority correctly notes that Appellant has made no such claim here. Op. 254 n. 7; App. Br. 5.
The Government also has a significant burden in defending section 3730(b)(2)-(3). “The circumstances under which the press and public can be barred from a criminal trial are limited; the State’s justification in denying access must be a weighty one____ It must be shown that the denial is necessitated by a compelling ... interest, and is narrowly tailored to serve that interest.” Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606-607, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). In the civil context too, the Government must articulate a compelling interest and narrow tailoring, as the majority notes. Op. 252-53 (citing Globe Newspaper Co.). Complaints, it goes almost without saying, have a foundational function in civil trials.
“We review de novo a properly preserved constitutional claim.” United States v. Hall, 551 F.3d 257, 266 (4th Cir.2009).
III.
Section 3730(b)(2)-(3) is facially unconstitutional because it automatically and categorically seals all FCA complaints for at least 60 days. By its plain terms, the statute seals “the complaint” for “at least 60 days,” renewable “for good cause,” and requires the complaint “not be served on the defendant until the court so orders.” 31 U.S.C. § 3730(b)(2)-(3).* That violates the fundamentally “public character of the trial” as well as our tenet “that historically both civil and criminal trials have been presumptively open.” Richmond Newspapers, 448 U.S. at 566, 580 n. 17, 100 S.Ct. 2814.
As the majority acknowledges, op. 252-53, our Circuit has recognized the value of this openness and found that the public has a First Amendment right to access civil dockets. In Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., we found that “[publicity of [court] records ... is necessary in the long run so that the public can judge the product of the courts in a given case.” 203 F.3d 291, 303 (4th Cir.2000). We have also held that “the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case.” Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir.1988). See also Va. Dep’t of State Police v. Washington Post, 386 F.3d 567, 575-78 (4th Cir.2004) (finding a right to access documents filed in connection with an opposition to a summary judgment motion); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178 (4th Cir.1988) (overturning the sealing of an entire record, except for the complaint, in an employment dispute), 948 F.2d 128 (4th Cir.1991) (subsequently rejecting the sealing of three documents because the trial court “declined to set forth any interest of its own, compelling or otherwise”).
*261 Section 3730(b)(2)-(3) impermissibly engages in content-based restrictions on speech, since it seals both content and the act of filing the complaint — and requires a district court to proactively order it be served on a defendant. This effectively “prohibit[s] public discussion of an entire topic.” Carey v. Brown, 447 U.S. 455, 463 n. 6, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (citing Consol. Edison Co. v. Public Serv. Comm’n, 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980)). These sorts of “[e]ontent-based regulations are presumptively invalid.” R.A. V. v. City of St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Therefore, Appellant has “establish[ed] ‘that no set of circumstances exists under which [the law] would be valid.’ ” Stevens, 130 S.Ct. at 1587.
The speech involved here is particularly valuable. Filing an FCA complaint is a symbolic and significant action — and the content of that complaint contains essential details about alleged fraud. Freedom to speak about the complaint allows relators to publicly say they have identified fraud and initiated a lawsuit, to invite the government to intervene, or to criticize the government for delay, inaction, or under-enforcement. The public interest in accessing FCA complaints is also especially strong, given the prominent and public role of qui tam relators. Transparency allows the public to monitor the progress of FCA enforcement since the “[publicity of [court] records ... is necessary in the long run so that the public can judge the product of the courts in a given case.” Columbus-America Discovery Group, 203 F.3d at 303. This is just the type of case where “the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases.” Gannett Co. v. DePasquale, 443 U.S. 368, 387 n. 15, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979).
More broadly, the freedom to speak about FCA complaints bolsters the public role of relators and pressures the government to rigorously enforce the FCA — or to expeditiously decline to intervene. It also reduces the risk that the government will under-enforce the FCA for political reasons, such as against campaign donors. Indeed, there is reason to believe that speech about FCA under-enforcement remains important. See, e.g., Department of Defense, Report to Congress on Contracting Fraud, Table 2 at 4 (January 2011), available at http://sanders.senate.gov/ graphics/Defense_Fraud_Reportl.pdf (finding that the United States paid $269 billion to defense contractors who had pri- or civil judgments against them for fraud, between 2007 and 2009 alone). While relators’ speech on this front might be disruptive or rare, our government “may not suppress ... the dissemination of views because they are unpopular, annoying or distasteful.” Murdock v. Pennsylvania, 319 U.S. 105, 116, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).
The majority, in concluding otherwise, adopts the Government’s argument that it has “a compelling interest in protecting the integrity of ongoing fraud investigations.” Op. 253; Gov Br. 25. But we should not so readily accept the Government’s generalized formulation of its ‘compelling’ interests. As our Court reasoned
not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation. Therefore, it is not enough simply to assert this general principle without providing specific underlying reasons for the district court to understand how the integrity of the investigation reasonably could be affected by the release of such information. Whether this general interest is applicable in a given case will depend on the *262 specific facts and circumstances presented in support of the effort to restrict public access.
Washington Post, 386 F.3d at 579.
Neither the majority opinion nor the text of 3730(b)(2)-(3) allows for such an individualized assessment of compelling interests. The seal provisions apply categorically to all litigants — -regardless of whether any secrecy is needed or requested, whether a fraudster has already been ‘tipped off,’ or whether the Government itself seeks to publicize the allegations. This stands in stark contrast with the ease-by-case assessments that are required to seal criminal proceedings. See Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 10, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (requiring individualized “findings specific enough that a reviewing court can determine whether the closure order was properly entered.”) (citations omitted). Even without section 3730(b)(2)-(3), district courts retain the power to conduct in camera review when it is necessary in a particular case. See, e.g., Yeager v. Drug Enforcement Admin., 678 F.2d 315, 324 (D.C.Cir.1982) (“A district court has ‘inherent discretionary power’ to allow access to in camera submissions where appropriate.”) (citation omitted); United States v. Hernandez-Escarsega, 886 F.2d 1560, 1581 (9th Cir.1989) (“District courts have the inherent power to receive in camera evidence and place it under seal in appropriate circumstances.”) (citation omitted); Fed.R.Civ.P. 5.2(d)-(e) (establishing rules for filings made under seal and protective orders). Additionally, even if we accept the Government’s claim that the FCA allows speech about ‘underlying facts,’ that actually undermines the ‘compelling’ nature of their stated interests. Allowing relators to publicize all of the ‘underlying facts,’ even without mentioning the complaint per se, would surely alert many wrongdoers. That is too self-defeating to be ‘compelling.’
Moreover, section 3701(b)(2)-(3) is not narrowly tailored. The majority mistakenly accepts the Government’s claim that the FCA does not prevent qui tam “relator[s] [from] disclosing] the facts underlying their allegations of fraud.” Gov. Br. 35; Op. 254 (“Nothing in the FCA prevents the qui tam relator from disclosing the existence of the fraud.”). But in reality, the Government has construed the seal provisions more broadly — in this case and many others. “The seal requirement has [] been held to apply not only to the complaint itself, but also to other documents filed prior to the government’s notice of intervention such as motions for extension of time and accompanying memoranda and affidavits.” John T. Boese, 1 Civil False Claims and Qui Tam Actions 4-215 (4th ed., 2011) (hereinafter Boese) (citations omitted).
Without relying on the complaint, other documents and affidavits, or any evidence contained therein, I am hard-pressed to see how any relator could still speak about fraud without violating the seal provisions or being chilled. Under this reading of the statute, the Government could threaten criminal prosecution against anyone who discusses even the basic facts of fraud, as Appellant alleges happened when it disclosed fraud to a newspaper. App. Br. 12-13. The Government could also move to dismiss the case altogether, as it regularly does. Boese at 4-216 to 4-217; 4-217 n. 819 (collecting cases from the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits where “the relator’s failure to adhere to these [seal] provisions resulted in the dismissal of the qui tam action.”).
Furthermore, section 3701(b)(2)-(3) is not narrowly tailored in how long it applies. The majority emphasizes that FCA *263 complaints are sealed for a “narrow window of time (i.e., 60 days),” and renewable only for “good cause.” Op. 258, 254. But by its plain terms, even after 60 days, a court must still proactively order the complaint be served on the defendant, and thus made meaningfully public. And in practice, the 60-day expiration is largely illusory: A 2009 Federal Judicial Center report found that “nearly half of the cases filed in 2008 [the previous year] are sealed as of late October 2009, but approximately 15% of cases filed early in the decade are still sealed late in 2009.” Federal Judicial Center, Sealed Cases in Federal Courts 5 (October 23, 2009) (emphasis added), available at http://www.fjc.gov/public/pdf.nsfi lookup/sealcafc.pdfi$file/sealcafc.pdf. A leading treatise reiterated that “most cases remain under seal for well over 60 days.” Boese at 4-224 (emphasis added) (citing United States ex rel. Givler v. Smith, 760 F.Supp. 72 (E.D.Pa.1991) (sealed for 11 months); United States ex rel. Curnin v. Bald Head Island Limited, 381 Fed.Appx. 286 (4th Cir.2010) (sealed for upwards of 5 years)). Additionally, the published guide for a U.S. Attorney’s office acknowledges that “most intervened or settled [FCA] cases are under seal for at least two years____” U.S. Attorney for the Eastern District of Pennsylvania, False Claims Act Cases: Government Intervention in Qui Tam (Whistleblower Suits) (emphasis added), available at http://www.justice.gov/usao/pae/ Documents/fcaprocess2.pdf.
Because I would hold that section 3730(b)(2)-(3) unconstitutionally limits free speech, I would not reach Appellant’s additional claims about ‘willing speakers’ or separation of powers.
Ultimately, opacity inflicts causalities in the darkened corners of our government, deteriorating the quality of our democracy subtly but surely. That the seal provision often lasts for years only worsens matters. In today’s era of growing debts and deficits, the FCA’s lack of transparency has especially stark fiscal implications. Instead of striving to categorically conceal this area of civil dockets, I would more rigorously apply the First Amendment and selectively seal records. Justice Brandéis said it best: “[s]unlight is ... the best of disinfectants.” Buckley v. Valeo, 424 U.S. 1, 67, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (quoting L. Brandeis, Other People’s Money 62 (National Home Library Foundation ed.1933)).

 Section 3730(b)(2)-(3) uses the phrases "in camera” and "under seal” somewhat interchangeably. That section of the law is generally known as the 'seal provision' — 'seal' being the operative term. Compare Black's Law Dictionary 763 (7th ed., 1999) (defining "in camera” primarily as "[i]n the judge's private chambers.”) with id. at 1350 (defining "seal” to include "to prevent access to (a document, record, etc.)”).