135 Nev., Advance Opinion 69

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant,
vs.
RIGOBERTO INZUNZA,
Respondent.

No. 75662

**FILED**

DEC 26 2019


ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting respondent's pretrial motion to dismiss an indictment. Eighth Judicial District Court, Clark County; Carolyn Ellsworth, Judge.

*Affirmed.*

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Jonathan VanBoskerck, Chief Deputy District Attorney, and Jacob J. Villani, Deputy District Attorney, Clark County, for Appellant.

Darin Imlay, Public Defender, and Deborah L. Westbrook and P. David Westbrook, Chief Deputy Public Defenders, Clark County, for Respondent.

BEFORE HARDESTY, STIGLICH and SILVER, JJ.

*OPINION*

By the Court, HARDESTY, J.:

The question presented in this case is whether the district court abused its discretion in granting respondent Rigoberto Inzunza's pretrial motion to dismiss the indictment for violation of his Sixth Amendment right to a speedy trial. The district court applied the factors enunciated in *Barker*

19-52125

*v. Wingo*, 407 U.S. 514, 530-33 (1972), and *Doggett v. United States*, 505 U.S. 647, 651-54 (1992), and concluded that the State violated Inzunza's right to a speedy trial because the State's gross negligence caused a 26-month delay between the filing of charges and Inzunza's arrest, and the State offered nothing to rebut the presumption that the delay prejudiced Inzunza. We conclude that, given the length of the delay and the finding that it was caused by the State's gross negligence, the district court did not err in concluding that Inzunza was entitled to a presumption of prejudice under the *Barker-Doggett* factors. The State did not rebut this presumption in its opposition to Inzunza's motion to dismiss or at the evidentiary hearing before the district court, nor has the State explained on appeal how Inzunza was not prejudiced by the delay. Therefore, we affirm the district court's dismissal of the indictment.

## FACTS AND PROCEDURAL HISTORY

Rigoberto Inzunza lived with E.J.'s mother when E.J. was nine years old. During this time, Inzunza allegedly sexually assaulted E.J. while her mother was at work and her siblings were sleeping. The abuse was alleged to have continued for at least a year until Inzunza eventually moved out and relocated to New Jersey. Six years later, 15-year-old E.J. disclosed to her therapist that Inzunza had sexually assaulted her. The therapist informed E.J.'s mother, and E.J. and her mother both went to the North Las Vegas Police Department (NLVPD) to file a police report. The NLVPD interviewed E.J. and began an investigation into Inzunza. E.J.'s mother informed Detective Mark Hoyt that Inzunza lived in New Jersey. She also gave Detective Hoyt printouts from Inzunza's Facebook profile that depicted his car, New Jersey license plate, and his employer's work truck with the business's name and number. Following an attempt to locate

Inzunza locally, Detective Hoyt submitted the case to the District Attorney's (DA's) office to file charges against Inzunza.

On December 3, 2014, one month after E.J. reported the sexual assault, the State filed a criminal complaint charging Inzunza with 10 counts of sexual assault of a minor under 14 years of age and 5 counts of lewdness with a child under 14 years of age. The NLVPD's records department staff entered the warrant into the National Crime Information Center (NCIC) database, but consistent with NLVPD policy, no one informed Detective Hoyt, and Detective Hoyt made no further effort to follow up on the case. A little over two years later, on January 29, 2017, Monmouth County Sheriff's Department arrested Inzunza in New Jersey based on the outstanding warrant. He was transported to Nevada, and the State subsequently obtained an indictment, adding another count of sexual assault of a child under 14 years of age.

Inzunza moved to dismiss the case, arguing that the State had violated his Sixth Amendment right to a speedy trial and his due process rights under the Fifth and Fourteenth Amendments. Inzunza complained of the delay between the day he was charged and his arrest, which was approximately two years and two months.

The State conceded that the NLVPD knew that Inzunza was in New Jersey, but it explained that it would have been futile for the NLVPD to contact New Jersey authorities before the State obtained a warrant for Inzunza's arrest. It further explained that the State's policy does not alert the detective when the warrant issues, so the error was in the NLVPD "failing to check up and then seeing that a warrant was approved and then following up on the information from New Jersey." Detective Hoyt explained at the evidentiary hearing that he had relied on the DA's office to

file charges, and return the case to NLVPD to get a warrant and enter the warrant into the NCIC database. He then "hope[d]" that utilizing the NCIC database would work to apprehend Inzunza, but he never followed up on the New Jersey identification or Facebook information or attempted to contact authorities in New Jersey. He indicated that it was not the NLVPD's policy to follow up on a case once submitted to the DA's office, to call other jurisdictions without a warrant, or to follow up on Facebook leads. Rather, after he submits a case to the DA's office, the case is "out-of-sight out-of-mind" for the department. Finally, Detective Hoyt explained that it was not customary for the already taxed police department to expend additional resources in tracking down the perpetrator in a case that was not "high profile," but rather a "common sexual assault" case.

The district court concluded that the State had been grossly negligent in pursuing Inzunza. Applying the principles and factors under the *Barker-Doggett* test, the district court determined that the case should be dismissed because: (1) the delay between the filing of charges and the time of Inzunza's arrest was presumptively prejudicial, (2) the State's gross negligence caused the entire delay, (3) Inzunza was not required to assert his right to a speedy trial earlier when he did not know about the charges or arrest warrant, and (4) the State had not rebutted the presumption that the delay had prejudiced Inzunza.

The State appeals the dismissal, arguing that the district court abused its discretion because the *Barker-Doggett* factors do not weigh in Inzunza's favor.

## DISCUSSION

We review a district court's decision to grant or deny a motion to dismiss an indictment based on a speedy trial violation for an abuse of discretion. *See Hill v. State*, 124 Nev. 546, 550, 188 P.3d 51, 54 (2008)

(reviewing for abuse of discretion a denial of motion to dismiss an indictment based on grand juror bias); *cf. State v. Craig*, 87 Nev. 199, 200, 484 P.2d 719, 719 (1971) (reviewing for abuse of discretion a grant of motion to dismiss an indictment based on a statutory speedy trial violation). In evaluating whether a defendant's Sixth Amendment right to a speedy trial has been violated, this court gives deference to the district court's factual findings and reviews them for clear error, but reviews the court's legal conclusions de novo. *See United States v. Gregory*, 322 F.3d 1157, 1160-61 (9th Cir. 2003); *see also United States v. Carpenter*, 781 F.3d 599, 607-08 (1st Cir. 2015) (noting that most federal circuit courts review district court rulings on Sixth Amendment speedy trial claims de novo).

*The Barker-Doggett speedy trial test*

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. We evaluate a claim alleging a violation of the Sixth Amendment speedy trial right by applying the four-part balancing test the United States Supreme Court set out in *Barker*, 407 U.S. at 530, and clarified in *Doggett*, 505 U.S. at 651. Under this test, courts must weigh four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. What is prevalent throughout speedy trial challenges is that "there [are] no hard and fast rule[s] to apply . . . , and each case must be decided on its own facts." *United States v. Clark*, 83 F.3d 1350, 1354 (11th Cir. 1996). Additionally, "[n]o one factor is determinative; rather, they are related factors which must be considered together with such other circumstances as may be relevant." *United States v. Ferreira*, 665 F.3d 701, 705 (6th Cir. 2011) (internal quotation marks

omitted). We therefore lay out the intricate *Barker-Doggett* test and the factors necessary for us to consider in this case.

*Length of delay*

The first factor, length of delay, is a "double [i]nquiry." *Doggett*, 505 U.S. at 651. First, to trigger the *Barker-Doggett* speedy-trial analysis, the length of the delay must be presumptively prejudicial. *Id.* at 651-52; *United States v. Erenas-Luna*, 560 F.3d 772, 776 (8th Cir. 2009). A post-accusation delay meets this standard "as it approaches one year." *Doggett*, 505 U.S. at 652 n.1; *see also United States v. Corona-Verbera*, 509 F.3d 1105, 1114 (9th Cir. 2007) (recognizing that "[m]ost courts have found a delay that approaches one year is presumptively prejudicial"). Second, if the speedy-trial analysis is triggered, the district court must consider, "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652; *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006). The length of time extending beyond the threshold one-year mark tends to correlate with the degree of prejudice the defendant suffers and will be considered under factor four—the prejudice to the defendant. *Doggett*, 505 U.S. at 652.

We hold that the district court did not abuse its discretion in determining that Inzunza's length of delay from charge to arrest was sufficient to trigger the *Barker-Doggett* analysis. A 26-month delay from charge to arrest is well over a year and, therefore, is long enough for the district court to classify as presumptively prejudicial so as to trigger the speedy-trial analysis. In arguing that this delay "is not so lengthy as to greatly prejudice Inzunza," the State ignores a string of cases allowing a *Barker-Doggett* analysis for significantly shorter delays than in *Doggett*.

*See, e.g., United States v. Moreno*, 789 F.3d 72, 81 (2d Cir. 2015) (analyzing a 27-month delay, of which 10 months were attributable to the government); *United States v. Dent*, 149 F.3d 180, 185 (3d Cir. 1998) (analyzing a 26-month delay, of which 14 months were attributable to the government); *United States v. Beamon*, 992 F.2d 1009, 1014 (9th Cir. 1993) (analyzing a 17- and 20-month delay attributable to the government).

### Reason for delay

The second factor, the reason for the delay, focuses on whether the government is responsible for the delay and is the "focal inquiry" in a speedy trial challenge. *United States v. Alexander*, 817 F.3d 1178, 1182 (9th Cir. 2016) (internal quotation marks omitted). A district court's finding on the reason for delay and its justification is reviewed "with considerable deference." *Doggett*, 505 U.S. at 652. The *Barker* Court outlined three types of governmental delay, with each assigned a corresponding weight:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531 (footnote omitted). Furthermore, and applicable to these facts, "[o]ur toleration of negligence varies inversely with the length of the delay that the negligence causes." *United States v. Oliva*, 909 F.3d 1292, 1302 (11th Cir. 2018) (internal quotation marks omitted).

We conclude the district court did not abuse its discretion under factor two when it found the 26-month delay was caused entirely by the State's "gross negligence." Though Detective Hoyt had knowledge of

Inzunza's whereabouts, he did not attempt to contact Inzunza or have him arrested during the entire 26-month period. Moreover, there was no evidence showing that Inzunza was aware of the charges before the date of his arrest. Therefore, the district court correctly found that the State was solely responsible for the delay. *See Doggett*, 505 U.S. at 652 (affording a district court's finding "considerable deference" when it determines the reason for delay and its justification).

*Assertion of the right*

The third factor is "whether in due course the defendant asserted his right to a speedy trial." *Erenas-Luna*, 560 F.3d at 778 (internal quotation marks omitted); *see Barker*, 407 U.S. at 531-32 (explaining that "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right"). The State argues that this factor weighs against Inzunza because he did not assert his right to a speedy trial during the period of time between the filing of charges and his arrest. However, this argument misses the fact that a defendant must know that the State had filed charges against him to have it weighed against him. *See Doggett*, 505 U.S. at 653-54 (stating that a defendant who is ignorant as to the formal charges against him "is not to be taxed for invoking his speedy trial right only after his arrest"). Thus, the district court did not abuse its discretion in finding that the assertion of the right was not weighed against Inzunza under *Doggett*.

*Prejudice to the defendant*

The last factor we must consider is prejudice to the defendant. In assessing prejudice, courts look at the following harms that the speedy-trial right was designed to protect against: "oppressive pretrial

incarceration," "anxiety and concern of the accused," and "the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* The only relevant interest here is the last, as Inzunza was not incarcerated before his arrest, nor did he suffer anxiety given that he was unaware of the charges against him.

"[I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett*, 505 U.S. at 655 (quoting *Barker*, 407 U.S. at 532). Thus, "courts should not be overly demanding with respect to proof of such prejudice." 5 Wayne R. LaFave et al., *Criminal Procedure* § 18.2(e) (4th ed. 2015). As *Doggett* makes clear, the prejudice factor of *Barker* may weigh in favor of the defendant even though he "failed to make any affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." 505 U.S. at 655. For example, in *Doggett*, the Supreme Court found that the delay between the defendant's indictment and arrest, of which six years was solely attributable to the government's negligence, was sufficiently egregious to presume prejudice. *Id.* at 657-58. When the presumption of prejudice is applied, the State is afforded the opportunity to rebut the presumption and detail how the defendant was not prejudiced by the delay. *See id.* at 658. If the State is unable to rebut the presumption, the *Barker* factors will weigh in a defendant's favor, necessitating the "severe remedy of dismissal," which is "the only possible remedy" when a defendant's speedy-trial right has been denied. *Barker*, 407 U.S. at 522.

Relieving the defendant of showing actual prejudice is typically triggered in cases in which the delay is five years or more. *See, e.g., United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) ("[T]his Court and others generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years."); *see also United States v. Velazquez*, 749 F.3d 161, 175 (3d Cir. 2014) ("Negligence over a sufficiently long period can establish a general presumption that the defendant's ability to present a defense is impaired, meaning that a defendant can prevail on his claim despite not having shown specific prejudice."). However, a "bright-line rule" is not appropriate under the *Barker-Doggett* test, and, therefore, the presumption of prejudice is not forfeited simply because Inzunza's delay is less than five years.[1] *Ferreira*, 665 F.3d at 708-09. Rather, "[t]he amount of prejudice a defendant must show is inversely proportional to the length and reason for the delay." *Alexander*, 817 F.3d at 1183 (citing *Doggett*, 505 U.S. at 655-56).

In this case, we face the difficult task of analyzing contextually a delay that is greater than one year but less than five, coupled with a reason for the delay that is something more than mere negligence, but less than bad-faith intentional misconduct on the government's part. *Oliva*, 909

---

[1]We previously held in *State v. Fain*, 105 Nev. 567, 569-70, 779 P.2d 965, 966-67 (1989), that dismissal of the indictment was improper because the defendant was unable to show particularized prejudice from the nearly 4½-year delay. However, *Fain* predates *Doggett*, which rejected a defendant's requirement to affirmatively establish prejudice in every case to prevail on a speedy trial claim. *See Doggett*, 505 U.S. at 655-56 (detailing that "consideration of prejudice is not limited to the specifically demonstrable" and that "affirmative proof of particularized prejudice is not essential to every speedy trial claim"). Therefore, we recognize that *Doggett* overruled *Fain* to the extent *Fain* precluded the court from presuming prejudice to the defendant under certain circumstances.

F.3d at 1302 ("[T]he length of the delay impacts our determination of whether the Government's negligence weighs heavily against it."). While it is clear that intentional delay on the State's part would present "an overwhelming case for dismissal," *Doggett*, 505 U.S. at 656, it is less obvious whether something less than intentional delay—here, gross negligence—should result in dismissal when the delay is just over two years. Our canvass of federal caselaw involving similar lengths of delay caused by government negligence reveals that courts have applied the following factors in determining whether prejudice should be presumed: the length of the post-charge delay, whether the length of the post-charge delay was compounded by a lengthy and inordinate pre-charge delay, the complexity of the alleged crime, the investigation conduct by law enforcement, and whether the negligence was particularly egregious.[2] We find these factors

---

[2]*See, e.g.*, *Oliva*, 909 F.3d at 1305-06 (analyzing a 23-month delay and determining "[t]he Government's negligence" did not favor the defendant); *Brown v. Romanowski*, 845 F.3d 703, 717 (6th Cir. 2017) (evaluating a 25-month delay and finding the government's actions were "negligent at most" and did not favor the defendant); *Moreno*, 789 F.3d at 81 (attributing a 10-month delay to the government for failing "to exercise reasonable diligence," but the delay did not favor the defendant); *Ferreira*, 665 F.3d at 705, 708-09 (reasoning a 35-month delay and the government's "gross negligence" favored the defendant); *Erenas-Luna*, 560 F.3d at 778-80 (analyzing a 36-month delay and the government's "serious negligence" weighed in favor of the defendant); *United States v. Hall*, 551 F.3d 257, 272-73 (4th Cir. 2009) (reasoning a 24-month delay and "'neutral' factor[s]" such as a "complex conspiracy charge" did not favor the defendant); *Ingram*, 446 F.3d at 1338-39 (examining a 24-month delay and "egregious" government negligence favored the defendant); *Dent*, 149 F.3d at 185 (reasoning the government's action was "to blame" for only 14 months of a 26-month delay and thus did not favor the defendant); *Beamon*, 992 F.2d at 1013-14 (determining a 17- and 20-month delay for two defendants coupled with "the government's negligence" did not favor the defendants).

SUPREME COURT
OF
NEVADA

(O) 1947A

useful and apply them here. *See Ferreira*, 665 F.3d at 705 ("No one factor is determinative; rather, they are related factors which must be considered together with such other circumstances as may be relevant." (internal quotation marks omitted)).

In arguing that the district court erred in presuming prejudice, the State asserts that the delay was justified by the fact that Inzunza had moved to New Jersey, meaning that Detective Hoyt could not locate him using local investigative procedures. The State acknowledged before us that the detective was negligent in pursuing Inzunza, but insisted that fact is not a determinative factor because Detective Hoyt's investigation was consistent with the NLVPD's policy. We disagree and hold that the extent of the State's negligence and its inaction weighs in favor of Inzunza.

The record shows that the State had the means to locate Inzunza and failed to take any steps to do so. *See Doggett*, 505 U.S. at 652-53 (detailing that "[f]or six years the [g]overnment's investigators made no serious effort to [find him] . . . , and, had they done so, they could have found him within minutes"). The victim's mother provided Detective Hoyt with Facebook printouts with specific information about Inzunza's whereabouts in New Jersey. Detective Hoyt had Inzunza's location, and the printouts depicted his license plate and his employer's work truck, business name, and number. Further, the NLVPD crime report shows Inzunza's address in New Jersey and his employer's address. *See Ingram*, 446 F.3d at 1335 (recounting that law enforcement knew the defendant's phone numbers, where he lived, and where he worked). The only step taken by law enforcement to apprehend Inzunza was putting the arrest warrant in the NCIC database. *Doggett*, 505 U.S. at 652-53; *see also Ingram*, 446 F.3d at 1338 (reasoning the government's "feeble efforts to locate" the defendant

and the lack of evidence showing the defendant evaded law enforcement weighed against the government). Thus, we hold the investigation by law enforcement weighs in favor of Inzunza. The actions—or in this case the inaction—of law enforcement, despite the overwhelming information provided by E.J.'s mother to locate Inzunza, is fatal to the State's argument. *See Doggett*, 505 U.S. at 657 ("Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority.").

As to the State's contention that Detective Hoyt was merely following NLVPD policy, this fact does not negate the district court's finding that the delay was caused by the State's gross negligence. The detective's failure to pursue leads to locate Inzunza in New Jersey and the NLVPD's policy of not notifying the detective in charge of the case that a warrant has issued is dilatory. *See United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997) ("Government actions which are tangential, frivolous, *dilatory*, or taken in bad faith weigh heavily in favor of a finding that a speedy trial violation occurred." (emphasis added) (citing *United States v. Loud Hawk*, 474 U.S. 302, 315-17 (1986))); *Dilatory, Black's Law Dictionary* (11th ed. 2019) (defining "dilatory" as "[d]esigned or tending to cause delay"); *see also Ingram*, 446 F.3d 1339 (finding the government's "delay intolerable" where the officer in charge "knew that he was the only law enforcement agent responsible for arresting [the defendant]; and he had more than enough information to do so"). Had Detective Hoyt been informed that the warrant issued, steps could have been taken to arrest Inzunza that may have shifted the reason for delay from gross negligence to a valid reason to justify the delay. *See Barker*, 407 U.S. at 531. The only effort made by the State was

SUPREME COURT
OF
NEVADA

(O) 1947A

placing Inzunza's warrant in the NCIC database and hoping this singular action by the State was sufficient to apprehend Inzunza. *Cf. Erenas-Luna*, 560 F.3d at 775, 777 (agreeing with the lower court's conclusion that the government was "clearly seriously negligent" when it omitted placing a defendant's warrant in the NCIC database and "fail[ed] to take appropriate action[] to attempt to apprehend" the defendant in a timely manner (internal quotation marks omitted)).

Furthermore, there is no evidence in the record to show that Inzunza knew about the charges or that he was fleeing from the NLVPD when he left the state. *See United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008) (recognizing that a defendant who is aware of the charges against him or her and flees or otherwise causes the delay forecloses any Sixth Amendment speedy trial claim). Therefore, we agree with and defer to the district court's determination that the State's gross negligence was the sole reason for the delay of 26 months—entitling Inzunza to a presumption of prejudice. *See Doggett*, 505 U.S. at 652 (giving "considerable deference" to district court's determination).

With the burden shifted to the State to rebut the presumption of prejudice, we conclude the State failed to meet its burden. *See Doggett*, 505 U.S. at 658. As the district court noted, the State "offered no rebuttal evidence at the evidentiary hearing . . . [and] did not address prejudice in its Opposition to Defendant's Motion to Dismiss." In its opening brief, the State argues that during the evidentiary hearing the district court told the State "to stop" when it began to offer its argument why Inzunza was not prejudiced by the delay. Despite the State's attempt to rebut the district court's findings, we find no motions or pleadings in the record detailing the State's argument to supplement the evidentiary hearing. Further, the State

SUPREME COURT
OF
NEVADA

(O) 1947A

14

makes no persuasive rebuttal before this court or otherwise describes what evidence it intended to introduce to the district court. Because the State raises an issue on appeal that was not properly raised (or preserved) before the district court, we need not consider it. *Browning v. State*, 120 Nev. 347, 354, 91 P.3d 39, 45 (2004) ("[A]n appellant must present relevant authority and cogent argument; issues not so presented need not be addressed by this court." (internal quotation marks omitted)); *see also* NRAP 28(a)(10)(A) ("[T]he argument . . . must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies.").

The State further argues before us that the delay did not actually prejudice Inzunza because he was arrested during the statute of limitations period. This argument is misguided. Statutes of limitations deal with the period between the commission of the crime and the filing of charges, not the time period between obtaining a warrant to arrest until actual arrest, which is at issue here. Additionally, the statute of limitations period is meant to give the victim more time to come forward, not afford law enforcement more time to arrest the perpetrator. Therefore, we affirm the district court's finding that the State has not persuasively rebutted the presumption of prejudice entitled to Inzunza under the *Barker-Doggett* factors.

## *CONCLUSION*

The Sixth Amendment speedy-trial right is evaluated under the *Barker-Doggett* test, and we must afford the severe remedy of dismissal to Inzunza because it is "the only possible remedy" when a defendant's speedy-trial right has been denied. *Barker*, 407 U.S. at 522. The crimes alleged against Inzunza are serious. But the unusual facts concerning pre-arrest delay compel our affirmance of the district court's findings and conclusions

that Inzunza properly invoked his speedy-trial right, he was entitled to a presumption of prejudice, and the State failed to rebut the presumption. Accordingly, we affirm the district court's dismissal of the indictment.

_____ , J.
Hardesty

We concur:

_____ , J.
Stiglich

_____ , J.
Silver