# IN THE SUPREME COURT OF THE STATE OF NEVADA

KEVIN ANTWONE BELCHER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 82255

FILED

APR 27 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

A jury convicted appellant Kevin Belcher of three counts of sex trafficking a child less than 16 years of age under NRS 201.300(2), for which the district judge sentenced Belcher to three consecutive terms of 10 years to life in prison. Belcher appeals, and we affirm. Second Judicial District Court, Washoe County; Kathleen M. Drakulich, Judge.

### FACTS AND PROCEDURAL HISTORY

Appellant Kevin Belcher was 27 years old at the time of the charged acts. He lived in an apartment (Smithridge) with his triplet cousins, Trent, Trevor, and Travis; the triplets' two older brothers; the triplets' high school friend, Mason; and two other men. Smithridge had a "party atmosphere," and its residents regularly consumed alcohol and marijuana. Girls also frequented the apartment, including the three victims in this case—P.VP., M.R., and S.M.

P.VP., M.R., and S.M. were underage (13 and 14 years old) when they met Belcher. Each victim testified that, at Belcher's request, she had sex with men in exchange for money. Also at Belcher's request, P.VP., M.R., and S.M. sent Belcher nude photographs, which they saw him use to create online prostitution advertisements. Belcher arranged so-called "dates" for P.VP., M.R., and S.M. with men who answered the ads. Mason was Belcher's "student" and helped Belcher prostitute P.VP. and M.R. by

22-13321

creating online prostitution ads, letting Belcher use his phone, and driving the girls to dates because Belcher did not have a phone or car of his own. All told, P.VP., M.R., and S.M. participated in over 100 prostitution dates. They gave the money they were paid to Belcher (or to Mason on Belcher's behalf).

Detective Rand Hutson of the Reno Police Department (RPD) learned about Belcher from an interview with S.M. and directed RPD officers to arrest Belcher on an unrelated battery constituting domestic violence (BDV) warrant. Belcher provided Mason's name and phone number as "[n]ext of kin" on his jail intake form, and Hutson used the phone number to locate hundreds of associated online prostitution ads. A grand jury subsequently indicted Belcher on three counts of sex trafficking of a child under 16 years of age under NRS 201.300(2). At trial, the State presented testimony from P.VP., M.R., S.M., Mason, Trent, Trevor, Detective Hutson, and two expert witnesses, FBI Special Agent Paul Cline (SA Cline) (a member of the Northern Nevada Child Exploitation and Human Trafficking Task Force with special training in sex trafficking, sex-trafficking victimization, and the psychology of sex traffickers), and Dr. Dominique Roe-Sepowitz (an associate professor in the School of Social Work and director of the Office of Sex Trafficking Intervention Research at Arizona State University). The jury found Belcher guilty on all three counts, and the district court sentenced him to consecutive prison terms totaling 30 years to life in the aggregate. This appeal followed.

## DISCUSSION

On appeal, Belcher challenges (1) the sufficiency of the evidence, (2) the district court's admission of bad-act evidence involving Belcher's sexual conduct with the victims, (3) the district court's exclusion

of evidence of P.VP.'s prior history of prostitution, (4) the district court's refusal to instruct the jury that he was indigent, and (5) the prejudicial impact of pandemic-related precautions on his constitutional right to a fair and speedy trial; and asserts (6) cumulative error.

*1. Sufficiency of the evidence*

This court reviews a sufficiency-of-the-evidence challenge in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The elements of sex trafficking under NRS 201.300(2) are that the defendant (1) "[i]nduces, causes, recruits, harbors, transports, provides, obtains or maintains," (2) a child who is "less than 16 years of age when the offense is committed," (3) "to engage in prostitution," and (4) with intent for the child to so engage. Here, the State alleged and Belcher concedes that P.VP., M.R., and S.M. were under 16 years of age and engaged in prostitution. So, at issue is whether sufficient trial evidence supports the jury's conclusion that Belcher had the specific intent to, and did, induce, cause, recruit, harbor, transport, provide, obtain, or maintain P.VP., M.R., and S.M. to engage in prostitution. *See Ford v. State*, 127 Nev. 608, 613-14, 262 P.3d 1123, 1126-27 (2011) (holding that pandering under NRS 201.300 is a specific intent crime).

A victim's testimony is enough to support a conviction for sex trafficking under NRS 201.300(2). *See, e.g., Gaxiola v. State*, 121 Nev. 638, 648, 650, 119 P.3d 1225, 1232-33 (2005); *see also* NRS 179D.097(1)(q) (defining sex trafficking as a sexual offense). And each victim testified that Belcher recruited her to engage in prostitution. P.VP. testified that Belcher messaged her on Facebook, they talked for several months, they had sex

when they met in person, and shortly after having sex, Belcher asked her to buy him a birthday gift with money that she could obtain through prostitution. P.VP. testified that she engaged in prostitution because she believed Belcher was her boyfriend, she wanted him to like her, and she "loved him a lot." P.VP. recruited her sixth-grade best friend, M.R., at Belcher's request for "another girl." M.R. engaged in prostitution after Belcher gave her alcohol and scheduled a date for her. S.M., like P.VP., testified that Belcher was her "first real boyfriend," they regularly had sex while dating, and that she began prostituting because Belcher asked her for financial help. The State's expert witnesses—SA Cline and Dr. Roe-Sepowitz—contextualized the victims' testimony and testified that some traffickers employ "Romeo" pimping tactics, including forming romantic and sexual relationships with the victims, to groom and recruit them to engage in prostitution.

Each victim also testified that Belcher caused and induced each of them to engage in prostitution by creating online ads using nude photos, scheduling dates, and plying them with alcohol. Further, the victims testified that Belcher maintained their engagement in prostitution through physical violence. The State's experts testified that "guerilla" pimps use physical and sexual violence—including directing a victim to perform public sex acts—to maintain control over their victims. The victims' testimony alone, and contextualized by the State's experts, is sufficient for a jury to conclude, beyond a reasonable doubt, that Belcher engaged in sex trafficking and that he had the specific intent to do so because he collected the money received by the girls. *See Grant v. State*, 117 Nev. 427, 435, 24 P.3d 761, 766 (2001) (holding that the State may establish intent with circumstantial evidence). To the extent Belcher argues that the victims'

testimony was inconsistent or incredible due to their age, gender, and trauma, such inquiries are not for this court's review. *McNair*, 108 Nev. at 56, 825 P.2d at 573 ("[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses.").

Other evidence corroborates the girls' testimony. The State called three accomplice witnesses—Trent, Trevor, and Mason—who testified that Belcher made money by prostituting young girls, including P.VP., M.R., and S.M. The accomplices also testified that they witnessed Belcher's violence toward the victims and that P.VP. performed oral sex on each of them in a vehicle at Belcher's command. Mason testified that Belcher directed him to give the girls "alcohol so their minds would get loosened up a little bit," that Belcher was teaching him how to prostitute girls, and that he gave all prostitution proceeds to Belcher.

The State further corroborated the victims' and accomplices' testimony with over 60 exhibits depicting the online ads. Many of the ads included the phone number and address that Belcher provided RPD upon his arrest. The State also presented a Motel 6 folio bearing Mason's name, which corroborated the victims' testimony that Belcher occasionally took them to hotels to engage in prostitution. Mason testified that P.VP. and M.R. had prostitution dates at the Motel 6, and Belcher paid him back for the room with the proceeds. Several of the prostitution ads listed the Motel 6 address.

The victims' testimony, corroborated by the accomplice witnesses' testimony and physical evidence, was sufficient for the jury to find Belcher guilty beyond a reasonable doubt of three counts of sex trafficking a child under 16 years of age.

## 2. *Admission of bad-act evidence*

Belcher moved to exclude several categories of prior bad-act evidence ahead of trial. The district court denied Belcher's motion in part and admitted the following bad-act evidence—Belcher's sexual intercourse with P.VP., M.R., and S.M.; testimony about a Snapchat video of S.M. performing oral sex on Belcher; Belcher's urination on S.M.; and Belcher's direction of P.VP. to perform oral sex on Trent, Trevor, and Mason while in a vehicle—for nonpropensity purposes under NRS 48.045(2), or alternatively, as sexual-offense propensity evidence under NRS 48.045(3) or as res gestae evidence under NRS 48.035(3). This court reviews the district court's admission of bad-act evidence for an abuse of discretion. *Franks v. State*, 135 Nev. 1, 3, 432 P.3d 752, 754-55 (2019).

Belcher objected to this bad-act evidence as improper propensity evidence under NRS 48.045(2) in the district court. But he does not re-raise the objection on appeal, thereby waiving it. *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (holding that arguments not raised in appellant's opening brief are waived); *see also Campo v. Carnival Leisure Indus., Ltd.*, 110 Nev. 1008, 1009, 879 P.2d 745, 746 (1994) (affirming district court's alternative conclusion because appellant failed to challenge the court's decision on that basis on appeal). We accordingly affirm on these grounds. *See United States v. Rrapi*, 175 F.3d 742, 749 (9th Cir. 1999) (holding that the district court did not err by ruling that evidence was alternatively admissible on other grounds and affirming on those grounds).

Even if the district court erred in admitting the bad acts under NRS 48.045(2), admission would otherwise be supported under NRS 48.045(3) ("Nothing in this section shall be construed to prohibit the

admission of evidence in a criminal prosecution for a sexual offense that a person committed another crime, wrong or act that constitutes a separate sexual offense . . . '[S]exual offense' has the meaning ascribed to it in NRS 179D.097."). *See id.* § 179D.097(1)(r) (defining a "sexual offense" as "[a]ny other offense that has an element involving a sexual act or sexual conduct with another"); *Rrapi*, 175 F.3d at 749. Nevada courts apply the factors established in *United States v. Lemay*, 260 F.3d 1018, 1028 (9th Cir. 2001), when assessing whether unfair prejudice substantially outweighs the probative value of evidence admitted under NRS 48.045(3). *Franks*, 135 Nev. at 6, 432 P.3d at 756-57. In this case, the district court analyzed and admitted the evidence pertaining to Belcher directing P.V.P. to perform oral sex on Trent, Trevor, and Mason in a vehicle under NRS 48.045(3), properly evaluating its admissibility under the *Lemay* factors. The same analysis supports its decision to admit the other bad acts evidence; specifically, that the balance of the *Lemay* factors in this case does not show that undue prejudice substantially outweighed the probative value of these bad acts. We therefore alternatively affirm the court's admission of Belcher's bad act under NRS 48.045(3). *See Franks*, 123 Nev. at 7, 432 P.3d at 757 ("[Prior acts] evidence need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*." (internal quotation marks omitted)).[1]

*3. Exclusion of victim bad-act evidence*

---

[1]The district court also alternatively admitted several of Belcher's bad acts as res gestae evidence under NRS 48.035(3), which we need not address because the evidence was properly admitted on other grounds. *See Rrapi*, 175 F.3d at 749.

Belcher argues that the district court abused its discretion by excluding evidence that P.VP. previously engaged in prostitution. Belcher does not provide a nonpropensity purpose to which this evidence is relevant, and the district court therefore did not abuse its discretion by excluding it. *See* NRS 48.045(2) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person to show that the person acted in conformity therewith."); *Mortensen v. State*, 115 Nev. 273, 280, 986 P.2d 1105, 1110 (1999) (holding that prior bad-act evidence is inadmissible unless relevant for a nonpropensity reason). To the extent Belcher argues this evidence was relevant to show that P.VP. entrapped Belcher (i.e., that she consented to the prostitution activity and involved Belcher in it), consent is not a valid defense to sex trafficking. NRS 201.300(4) ("Consent of a victim of pandering or sex trafficking to an act of prostitution is not a defense to a prosecution for any of the acts prohibited by this section."); *see also United States v. Campbell*, 6 F.4th 764, 772 (8th Cir. 2014) (holding that victim's prior prostitution activity was irrelevant because minor victim could not legally consent to sex trafficking).

*4. Denial of jury instruction*

During jury selection, Belcher's counsel mentioned to the venire that he owned a private law practice. At trial, Belcher requested the following jury instruction to counteract the alleged inference that he could afford private counsel using prostitution revenue: "Mr. Belcher has been previously deemed indigent by this court, and his attorney has been appointed to represent him." The district court denied the instruction because it was prejudicial to Belcher and unsupported by legal authority. We review for an abuse of discretion. *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005).

"[T]he defense has the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be," but the district court is not obligated to instruct the jury on theories that the law does not support. *Vallery v. State*, 118 Nev. 357, 372, 46 P.3d 66, 76-77 (2002) (internal quotation marks omitted). Belcher cites no legal authority to support his proposed instruction. The district court did not abuse its discretion by declining to give the jury the legally unsupported instruction Belcher requested. *Hardaway v. State*, 112 Nev. 1208, 1211, 926 P.2d 288, 290 (1996) (upholding district court's denial of jury instruction when appellant cited no authority to support the instruction).

## 5. Belcher's right to a fair and speedy trial

The COVID-19 pandemic interrupted the normal progression of Belcher's trial, and Belcher alleges many errors on appeal associated with pandemic-related delays and safety measures.

### a. Separation of powers

Belcher argues that Governor Sisolak's emergency closure orders violated the separation-of-powers doctrine. *See* Nev. Const. art. 3, § 1; NRS 414.060 (enumerating the powers and emergency management duties of the Governor); *Miller v. French*, 530 U.S. 327, 341 (2000) ("The Constitution enumerates and separates the power of the three branches of Government in Articles I, II, and III, and it is this 'very structure' of the Constitution that exemplifies the concept of separation of powers."). Belcher failed to raise this issue below, and we accordingly review for plain error. *Martinorellan v. State*, 131 Nev. 43, 49, 343 P.3d 590, 593 (2015) ("We ordinarily review an error that was not preserved in the district court for plain error."). No plain violation of the separation-of-powers doctrine occurred because Chief Judge Freeman of the Second Judicial District Court

SUPREME COURT
OF
NEVADA

(O) 1947A

9

closed court operations, independent of (although in light of) Governor Sisolak's emergency closure orders, which is within the chief judge's power and discretion to do. *See* Nev. Const. art. 6, § 1 (giving the judiciary authority over the court system); NRS 3.025(2)(c) (giving the chief judge authority to "[a]dopt such other rules or regulations as are necessary for the orderly conduct of court business"); *Halverson v. Hardcastle*, 123 Nev. 245, 261, 163 P.3d 428, 440 (2007) (holding that the judiciary has "inherent authority to administrate its own procedures and to manage its own affairs").

### b. Speedy trial

Belcher argues that pandemic-related delays violated his right to a speedy trial. Belcher did not move to dismiss the charges against him based on a speedy-trial violation below; however, Belcher raised speedy-trial concerns in his motion for pretrial release or bail reduction, so this court reviews the error for an abuse of discretion. *See State v. Inzunza*, 135 Nev. 513, 516, 454 P.3d 727, 730 (2019) (reviewing a district court's denial of "a motion to dismiss an indictment based on a speedy trial violation for an abuse of discretion"). Belcher expressly waived his statutory right to a trial within 60 days under NRS 178.556(1)—albeit for the purpose of keeping the trial in the same judicial department, *Brodhead v. Sheriff*, 87 Nev. 219, 223, 484 P.2d 1092, 1094 (1971) (holding that the statutory speedy-trial right may be waived)—so this court only addresses the alleged violation of Belcher's federal constitutional right to a speedy trial. U.S. Const. amend. VI.

This court applies the four-factor *Barker-Doggett* test to assess whether a criminal defendant's constitutional right to a speedy trial was violated, *Inzunza*, 135 Nev. at 516, 454 P.3d at 731; those factors include (1) the length of the delay, (2) the reason for the delay, (3) the defendant's

assertion of his speedy-trial rights, and (4) prejudice to the defendant. *Doggett v. United States*, 505 U.S. 647, 651 (1992); *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Although the one-year delay between Belcher's indictment and trial is presumptively prejudicial,[2] *Inzunza*, 135 Nev. at 516-17, 454 P.3d at 731 (holding that a delay approaching one year is presumptively prejudicial), the other *Barker-Doggett* factors do not weigh in his favor: Belcher caused at least four months of the disputed delay by terminating his appointed counsel, which triggered a *Young* hearing and appointment of new counsel who requested two continuances. *See Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004). The other eight months of the contested delay are attributable to a neutral (and justifiable) reason—the pandemic. *See Inzunza*, 135 Nev. at 517, 454 P.3d at 731-32 (looking to whether the State intentionally caused the delay); *cf. United States v. Olsen*, 995 F.3d 683, 693 (9th Cir. 2021) (holding that "a global pandemic that has claimed more than half a million lives in this country . . . falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health), *amended and superseded on denial of reh'g en banc*, 21 F.4th 1036 (2022); *United States v. Smith*, 460 F. Supp. 3d 981, 984 (E.D. Cal. 2020) ("Almost every court faced with the question of whether general COVID-19 considerations justify an ends-of-justice continuance and exclusion of time [from speedy-trial considerations] has arrived at the same answer: yes.").

---

[2]Belcher's speedy trial right attached upon accusation of the instant charges (i.e., the indictment) and not at the time of his arrest on an unrelated charge. *See Dillingham v. United States*, 423 U.S. 64, 64-65 (1975) (holding that a speedy-trial right attaches upon a finding of probable cause regarding the instant charges); *Sheriff v. Berman*, 99 Nev. 102, 106, 659 P.2d 298, 301 (1983).

Supreme Court
of
Nevada

(O) 1947A

11

Next, Belcher's failure to seek dismissal of the charges against him based on a speedy-trial violation weighs against a finding of prejudice. *Cf. Anderson v. State*, 86 Nev. 829, 834, 477 P.2d 595, 598 (1970) (holding that a defendant must object to the trial date below to raise speedy trial argument on appeal). Finally, Belcher fails to establish that the contested delay caused him prejudice because the duration of his pretrial incarceration was relatively short, *Inzunza*, 135 Nev. at 519, 454 P.3d at 733 ("Relieving the defendant of showing actual prejudice is typically triggered in cases in which the delay is five years or more."), and he failed to offer any proof that the delay impaired his defense by impacting the availability of witnesses, records, or other evidence, *see Sheriff v. Berman*, 99 Nev. 102, 108, 659 P.2d 298, 301 (1983) (holding that respondents failed to show prejudice by failing to offer proof that the delay impacted their defense). The district court's pandemic-related delays therefore did not violate Belcher's constitutional right to a speedy trial. *See Middleton v. State*, 114 Nev. 1089, 1110, 968 P.2d 296, 310-11 (1998) (holding that speedy-trial right was not violated where defendant failed to show prejudice and other factors did not weigh in his favor).

*c. Confrontation rights*

Belcher argues that the district court violated his Sixth Amendment confrontation right by requiring him and his counsel (at times) to wear a mask during trial. Belcher did not object on these grounds below—in fact, Belcher's counsel stated that "[a]s long as the jury can see the face of the witness, . . . then I'm happy"—and our review is for plain error. *Martinorellan*, 131 Nev. at 49, 343 P.3d at 593 (holding that plain error is error that is apparent from a casual inspection of the record). It is not apparent on this record that Belcher's confrontation rights were violated because the State's witnesses appeared at trial in person, and Belcher had

an unimpeded view of all witnesses. Each witness swore an oath to tell the truth, and Belcher's counsel cross-examined each witness. Finally, the jury could evaluate the demeanor of each witness because the witnesses removed their masks while testifying, and the district court ensured that all jurors, including alternates, had an unimpeded view of the witnesses. Belcher's confrontation rights were accordingly satisfied. *Maryland v. Craig*, 497 U.S. 836, 846 (1990) (holding that a defendant's confrontation rights require physical presence of the witness, cross-examination, and observance of demeanor by the trier of fact); *Lipsitz v. State*, 135 Nev. 131, 136, 442 P.3d 138, 143 (2019) (same).

To the extent Belcher argues that his confrontation right was violated because he and his attorney wore masks at trial, such a requirement fits well within the public-policy exception for face-to-face meetings because masks furthered the public policy interest of ensuring the health and safety of everyone in the courtroom during the pandemic. *See, e.g., United States v. Berglund*, No. 20-cr-00200 (SRN/TNL), 2021 WL 1589548, at *1 (D. Minn. Apr. 23, 2021) ("Courts have repeatedly found that requiring participants at trial to wear face masks due to the COVID-19 pandemic does not violate a criminal defendant's constitutional rights."); *United States v. Tagliaferro*, 531 F. Supp. 3d 844, 850 (S.D.N.Y. 2021) (holding that requiring the defendant to wear a mask during the pandemic fits within the public-policy exception to the Confrontation Clause); *United States v. Trimarco*, No. 17-CR-583 (JMA), 2020 WL 5211051, at *6 (E.D.N.Y. Sept. 1, 2020) (stating that there is "no authority or constitutional basis for the notion that [the defendant's] entire face must be fully visible to the jury during trial").

### d. Fair-cross-section requirement

Belcher briefly argues that pandemic-related precautions caused minority populations to be underrepresented in the jury venire. Again, Belcher did not object to the composition of the jury venire below, so we review for plain error. *Martinorellan*, 131 Nev. at 48-49, 343 P.3d at 593. The record on appeal does not demonstrate that pandemic-related precautions caused or resulted in an unfair cross-section of the community to be represented in the jury venire. *See Evans v. State*, 112 Nev. 1172, 1186, 926 P.2d 265, 275 (1996) ("The defendant bears the burden of demonstrating a prima facie violation of the fair-cross-section requirement."). Accordingly, Belcher has failed to demonstrate plain error.

### e. Miscellaneous arguments

Finally, Belcher challenges Detective Hutson's improper reference to Belcher's arrest on an unrelated BDV charge at trial. Though the parties stipulated against reference to the arrest, in response to the State's question if he became aware of a telephone number associated with Belcher, Hutson responded: "Yes, sir. When Mr. Belcher was arrested on an outstanding warrant, he provided a number to the Washoe County Jail . . . ." The district court sustained Belcher's objection and struck the testimony, but Hutson referenced the arrest again in response to the State's question about Belcher's address. The district court sustained Belcher's objection again, struck the testimony, and admonished the witness against further reference to the arrest. Later, and in response to a juror's question about the arrest, the court admonished the jury against considering Hutson's statements.

The remedy that Belcher seeks on appeal is unclear because, instead of seeking a new trial based on the alleged prejudice that Hutson's statements caused, Belcher argues that pandemic-related restrictions and

SUPREME COURT
OF
NEVADA

(O) 1947A

14

delays chilled his ability to seek a mistrial on these grounds. Belcher has failed to offer a cogent argument in support of his claim. Nevertheless, we review whether the district court's failure to sua sponte order a mistrial on these grounds constitutes an abuse of discretion. *Owens v. State*, 96 Nev. 880, 883, 620 P.2d 1236, 1238 (1980) (reviewing a district court's denial of a mistrial for an abuse of discretion). Here, the record does not show that the State intentionally solicited Hutson's improper statements, and the district court adequately cured any prejudice that the statements caused by sustaining Belcher's objections to both statements, striking both statements from the record, admonishing the witness, and admonishing the jury against considering those statements during deliberations. *See Sterling v. State*, 108 Nev. 391, 394, 834 P.2d 400, 402 (1992) (holding that "inadvertent references to other criminal activity not solicited by the prosecution, which are blurted out by a witness, can be cured by the trial court's immediate admonishment to the jury to disregard the statement"); *State v. Varga*, 66 Nev. 102, 123, 205 P.2d 803, 813 (1949) (holding that prejudicial error did not occur because the State did not solicit improper answers, the court sustained both objections, immediately struck the improper testimony, and admonished the jury not to consider the improper statements). Indeed, the district court asked Belcher for his desired remedy after both statements, and both times, Belcher asked the court for a jury instruction in lieu of immediate admonishment or a mistrial. We conclude that the district court did not abuse its discretion by failing to sua sponte order a mistrial.

*6. Cumulative error*

We conclude that the district court did not commit the alleged errors and, therefore, "there is nothing to cumulate." *See Belcher v. State*, 136 Nev. 261, 279, 464 P.3d 1013, 1031 (2020).

Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Silver

_____, J.
Cadish

_____, J.
Pickering

cc:    Hon. Kathleen M. Drakulich, District Judge
       Orrin Johnson Law
       Attorney General/Carson City
       Washoe County District Attorney
       Washoe District Court Clerk