**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4049

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NEDELTCHO VLADIMIROV,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Irene C. Berger, District Judge.  (2:20−cr−00054−1)

Argued:  January 27, 2023                    Decided:  March 16, 2023

Before HARRIS, Circuit Judge, and MOTZ and KEENAN, Senior Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Richard W. Weston, WESTON LAW, Lexington, Kentucky, for Appellant. Erik S. Goes, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.  **ON BRIEF:**  William S. Thompson, United States Attorney, Andrew J. Tessman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Nedeltcho Vladimirov was charged with various federal crimes related to his operation of a "mobile pawnshop." After a three-day trial, a jury convicted Vladimirov of one count of conspiracy to commit money laundering, 18 U.S.C. § 1956(h), and three counts of money laundering, 18 U.S.C. § 1957(a). Vladimirov raises several arguments on appeal, including a Confrontation Clause challenge to the district court's ruling requiring all witnesses to wear masks, a Sixth Amendment speedy trial challenge, and various challenges to the court's evidentiary rulings. He also appeals the district court's denial of his motions for judgment of acquittal. For the reasons that follow, we affirm.

I.

In March 2020, a grand jury indicted Vladimirov on several federal charges related to his mobile pawnshop business.[1] The district court initially scheduled trial for May 2020 but, in April 2020, Vladimirov moved to continue the trial "[d]ue to the exigent circumstances of the COVID-19 pandemic." The court granted the motion and, over the next year, granted another motion by Vladimirov and multiple motions by the government to continue the trial due to the public health crisis. In February 2021, a grand jury returned a superseding indictment charging Vladimirov with one count of conspiracy to commit

---

[1] The superseding indictment also charged Vladimirov with one count of fraud conspiracy under 18 U.S.C. § 1349, which count the government voluntarily dismissed before trial.

2

money laundering under 18 U.S.C. § 1956(h) and three counts of money laundering under 18 U.S.C. § 1957(a).

Vladimirov's trial ultimately was scheduled for July 2021. Days before the trial was set to begin, Vladimirov filed a pro se motion to dismiss the indictment based on an alleged Sixth Amendment speedy trial violation. Before trial, Vladimirov's counsel asked the district court to consider Vladimirov's pro se motion. The court considered and denied Vladimirov's motion to dismiss.

Vladimirov's counsel also asked the district court to allow the witnesses to testify without masks, explaining that the witnesses' "demeanor" and "credibility" would "be very important in this case." At that time, a standing court order was in effect in the Southern District of West Virginia, which provided COVID-19 protocols and required that all jurors and unvaccinated individuals wear masks. The court denied Vladimirov's motion, stating that because the court did not know what precautions the witnesses had taken, all witnesses would be required to wear masks.

During the trial, the government presented testimony from several witnesses, including four shoplifters, or "boosters," who repeatedly stole goods from retail stores for the purpose of reselling them to Vladimirov. The four boosters testified that they met with Vladimirov between 40 and 100 times each and that, over the course of these meetings, they sold Vladimirov hundreds of stolen new-in-box items for about 30 percent of the items' "eBay value." These items often included computer hard drives, vacuum cleaners, and non-prescription medications. Immediately after stealing various products, the

3

boosters would schedule a meeting with Vladimirov, which often took place at either a local gas station or a bank parking lot.

According to the boosters, Vladimirov typically operated from his car at those locations. He referred to eBay to determine the anticipated sale price of the new products, and purchased the products from the boosters for about 30 percent of that price. Vladimirov always paid the boosters in cash for these items. The evidence further showed that Vladimirov later sold the same products he purchased from the boosters through his eBay platform.

Vladimirov told the boosters on at least a few occasions that he did not accept stolen goods. However, after one of the boosters accidentally stated to Vladimirov that an item was stolen, Vladimirov nevertheless purchased the item after the booster corrected himself and stated that he had "got" the item. This same booster testified that he showed Vladimirov a tool that the booster had devised to remove security devices from stolen items and demonstrated to Vladimirov its utility. That booster also stated that Vladimirov had his own tools for removing security devices.

The government also called as a witness Stephen Rowley, a former Internal Revenue Service special agent. Rowley examined Vladimirov's PayPal, bank, and eBay records. Rowley testified that Vladimirov deposited his eBay proceeds into his PayPal account, and then regularly transferred funds from that PayPal account to his City National Bank account. Vladimirov also regularly withdrew $700 from his City National Bank account.

From late 2017 to July 2019, Vladimirov repeated this pattern of deposits and withdrawals, depositing by late 2019 about $300,000 in eBay proceeds into his City

4

National Bank account.  In July 2019, Vladimirov made three transfers of over $150,000, one from his City National Bank savings account to his City National Bank checking account, one from his City National Bank checking account to a new account with Chase Bank, and one from his Chase Bank account to a bank in Bulgaria (the bank transfers).

The government also presented the testimony of two witnesses who were retail crime investigators.  Jose Varela was a senior manager for the organized retail crime team at CVS Health, and Nicholas Niehaus formerly served as an organized retail crime investigator for Target.  In his position with CVS Health, Varela had led about 50 investigations related to the resale of stolen goods.  He also had investigated similar crimes in his prior position as a special agent with the Miami, Florida, Police Department's Organized Retail Crime Unit.  Niehaus had worked in about 30 organized retail fraud investigations and had trained about 100 other individuals in conducting such investigations.  Varela and Niehaus each had participated in the investigation of Vladimirov and, accordingly, testified both as fact witnesses based on their personal observations and as expert witnesses based on their investigative experience.

At trial, the two witnesses described their investigations of Vladimirov, including their review of Vladimirov's eBay sales, their interviews with boosters, and certain controlled purchases involving Vladimirov.  Niehaus further described the government's search of Vladimirov's home, during which Niehaus identified a large volume of new-in-box products next to a "cleaning station," an area containing tools "to remove any identifying labels, devices, or security" features.

Finally, both witnesses explained that a fencing operation refers to "an illicit business that purchases stolen merchandise, gathers that merchandise, and then resells that merchandise." Both witnesses opined that Vladimirov was either running a fencing operation or that his operation was consistent with one. After the government rested its case, Vladimirov moved under Rule 29 for a judgment of acquittal, which the district court denied.

Vladimirov testified in his own defense and also presented the testimony of a police officer who, in his personal capacity, had sold Vladimirov a used camera and a used computer. Vladimirov testified that, in his mobile pawnshop business, he bought both new and used items from about 300 people per year. He denied knowing that the new products he purchased from the boosters were stolen.

After the jury returned its verdict convicting Vladimirov of one count of conspiracy to commit money laundering and three counts of money laundering, Vladimirov filed a post-trial Rule 29 motion for a judgment of acquittal, which the district court denied. The court thereafter imposed a sentence of 97 months' imprisonment and entered final judgment in the case. Vladimirov later filed the present appeal.

## II.

On appeal, Vladimirov raises two Sixth Amendment challenges. First, he argues that the district court violated his Confrontation Clause rights when the court required all witnesses to wear masks. Second, he contends that the delay between his March 2020 indictment and his July 2021 trial violated his constitutional right to a speedy trial.

6

Vladimirov also challenges several aspects of the government's expert witness testimony and argues that the district court erred when it denied his Rule 29 motions. We address each argument in turn, beginning with Vladimirov's Sixth Amendment challenges.

A.

i.

Before we can consider the merits of Vladimirov's Confrontation Clause challenge, we first must determine whether Vladimirov has preserved this issue for appeal. *See United States v. Cabrera-Beltran*, 660 F.3d 742, 751 (4th Cir. 2011). If Vladimirov made a timely and specific Confrontation Clause objection before the district court, we will review his constitutional challenge de novo. *See United States v. Mackins*, 315 F.3d 399, 405–06 (4th Cir. 2003). However, if Vladimirov failed to raise a timely and specific objection in the district court, he must satisfy the more deferential "plain error" standard of review in Federal Rule of Criminal Procedure 52(b). *See United States v. Miller*, 41 F.4th 302, 310 (4th Cir. 2022).

Our review of the record shows that Vladimirov's pretrial request was insufficient to preserve his Confrontation Clause challenge raised on appeal. Vladimirov's counsel stated to the district court his "concern [with] the witnesses . . . being masked during questioning," and explained that the case would "in large part[] have to do with the credibility of certain witnesses" who "have long and lengthy drug histories." He further stated that the "credibility" and "demeanor" of these witnesses would be "vastly important for the jury" and, accordingly, asked the court to allow the witnesses to testify without masks. The government did not oppose Vladimirov's motion.

7

Critically, Vladimirov did not identify a legal basis for his request to have the witnesses testify without masks. *See In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014) (explaining that a defendant must "state the grounds on which [his argument] is based" (citation omitted)). He did not refer to the Confrontation Clause, to the Sixth Amendment, or to the Constitution generally. Likewise, Vladimirov did not cite any case law that would have alerted the district court to the grounds for his objection. *See United States v. Bennett*, 698 F.3d 194, 199 (4th Cir. 2012) ("The entire purpose of an objection is to alert the district court to the actual basis of asserted error."). Because Vladimirov's motion lacked any stated connection to the constitutional challenge he now brings, the district court did not have reason to treat his request as implicating his constitutional right to face-to-face confrontation and the requirement that the court make case-specific findings under *Maryland v. Craig*, 497 U.S. 836 (1990).

Our conclusion is not altered by Vladimirov's contention raised during oral argument that his Confrontation Clause challenge was "apparent from the context." *Cf. Mackins*, 315 F.3d at 407 (identifying instances in which a constitutional objection may be preserved even if the proponent does not identify the specific constitutional provision). Certainly, in his oral motion before the district court, Vladimirov's counsel referred to the witnesses' demeanor and credibility. And the Supreme Court has recognized that "observation of demeanor by the trier of fact" is an "element[] of confrontation" that helps ensure the reliability of admitted evidence. *Craig*, 497 U.S. at 845–46.

Nevertheless, Vladimirov offered only general statements to the district court about the effect of masks on the witnesses' demeanor and credibility. We cannot ignore his

8

failure to invoke the Constitution, to cite any relevant case law, or to state any other relevant concepts that might have signaled to the district court that he objected based on the Confrontation Clause. Because Vladimirov's counsel did not give the district court any meaningful indication that he was objecting on this constitutional basis, we review his Confrontation Clause challenge for plain error.

ii.

To establish plain error, a defendant must show that (1) the district court erred, (2) the error was plain, and (3) the error affected the defendant's substantial rights. *See United States v. Olano*, 507 U.S. 725, 732–34 (1993). Even if the defendant meets his burden, we will "exercise [our] discretion to correct the error only if it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Lynn*, 592 F.3d 572, 577 (4th Cir. 2010) (quoting *United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009)).

The Confrontation Clause guarantees a defendant "the right . . . to be confronted with witnesses against him." U.S. Const. amend. VI. Even if we assume, without deciding, that the district court violated this right to face-to-face confrontation when it required witnesses to wear masks, Vladimirov's challenge falters at the second step of the plain error inquiry because he cannot show that the error was "clear" or "obvious." *United States v. Garcia-Lagunas*, 835 F.3d 479, 493 (4th Cir. 2016). "At a minimum, [we] cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Olano*, 507 U.S. at 734.

9

Neither the Supreme Court nor this Circuit has addressed many of the questions relevant to Vladimirov's Confrontation Clause challenge, including the threshold question whether requiring a witness to wear a mask impairs a defendant's constitutional right to face-to-face confrontation. We also note that guidance from other circuit courts on this issue remains limited. *See United States v. Carthorne*, 726 F.3d 503, 516 n.14 (4th Cir. 2013) ("Plain error may arise on occasion when our sister circuits have uniformly taken a position on an issue that has never been squarely presented to this Court, however, such cases are exceedingly rare." (quotation marks and citation omitted)). Because neither the Supreme Court nor this Circuit has provided any precedent addressing the constitutional implications of witnesses wearing masks while testifying during the COVID-19 pandemic, and our sister circuits have not adopted a uniform position on this issue, we will not find plain error in the district court's ruling. *See id.* at 516, 516 n.14. Thus, we reject Vladimirov's Confrontation Clause challenge because any such error was not plain.

## B.

We next turn to Vladimirov's other Sixth Amendment argument, namely, that the delay between his March 2020 indictment and his July 2021 trial violated his right to a speedy trial. *See* U.S. Const. amend. VI ("[T]he accused shall enjoy the right to a speedy and public trial."). We review de novo the district court's denial of Vladimirov's speedy trial motion. *United States v. Robinson*, 55 F.4th 390, 399 (4th Cir. 2022).

When we consider whether a delay in bringing a case to trial has violated a defendant's Sixth Amendment right to a speedy trial, we balance the four factors identified by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972). These factors are: "(1) the

10

'length of the delay'; (2) 'the reason for the delay'; (3) 'the defendant's assertion of his right'; and (4) the 'prejudice to the defendant.'" *Robinson*, 55 F.4th at 399 (quoting *Barker*, 407 U.S. at 530).

The delay that occurred in the trial of this case is presumptively prejudicial. *See United States v. Burgess*, 684 F.3d 445, 452 (4th Cir. 2012) ("The Supreme Court has observed that 'post[-]accusation delay [is] presumptively prejudicial at least as it approaches one year.'" (citation omitted)). However, we must balance this fact with the three remaining *Barker* factors, which we conclude weigh in the government's favor.

First, the delay did not result from a deliberate government attempt to forestall Vladimirov's trial. Instead, the delay was attributable to the unpredictable and unavoidable public health crisis presented by the COVID-19 pandemic. *See United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009) ("[A] deliberate attempt by the prosecution to delay the trial of an accused would weigh heavily against the government, although a valid reason for delay, such as a missing witness, may be justified.").

Second, although Vladimirov objected generally to two of the government's motions to continue the trial, he also twice moved to continue the trial. Moreover, Vladimirov did not file his motion to dismiss until more than sixteen months after his indictment, mere days before his trial. *See Robinson*, 55 F.4th at 400 (holding that the third *Barker* factor weighed in the government's favor when the defendant did not assert his speedy trial right until "over a year after his arrest" and approximately 100 days before his trial).

11

For the final *Barker* factor, we weigh the prejudice to Vladimirov by considering the interests of (1) "prevent[ing] oppressive pretrial incarceration"; (2) "minimiz[ing] anxiety and concern of the accused"; and (3) "limit[ing] the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. With regard to the first two considerations, Vladimirov has not explained how the conditions he faced caused him oppression, anxiety, or concern "greater than that faced by anyone openly subject to criminal investigation." *Robinson*, 55 F.4th at 400 (quoting *Hall*, 551 F.3d at 272). Indeed, although Vladimirov described an attack he personally experienced in jail more than one year before he filed his motion, he also asserted that "this is happening in jails around the U.S. . . . all the time." And, most importantly, regarding the third, "most serious," prejudice consideration, Vladimirov does not contend that the delay impaired his defense. *See Hall*, 551 F.3d at 273. Therefore, after balancing the *Barker* factors in this case, we conclude that the four factors do not weigh as a whole in Vladimirov's favor. Accordingly, we hold that Vladimirov was not denied his Sixth Amendment right to a speedy trial.

C.

Vladimirov next raises several arguments regarding the testimony of two government witnesses, Varela and Niehaus. After a complete review of the record, we conclude that only two of these arguments warrant discussion. We first address Vladimirov's objection at trial that Varela's and Niehaus's testimony was unreliable, and next turn to his argument raised for the first time on appeal that the district court failed to implement adequate safeguards regarding their dual roles as fact and expert witnesses.

i.

Vladimirov argues that the district court erred in overruling his objections that Varela and Niehaus did not use, or adequately explain their use of, a reliable methodology that would qualify them to offer expert testimony under Federal Rule of Evidence 702. We review this evidentiary ruling for abuse of discretion. *See United States v. Chikvashvili*, 859 F.3d 285, 292 (4th Cir. 2017); *United States v. Cloud*, 680 F.3d 396, 401 (4th Cir. 2012). "An abuse of discretion occurs [when] a decision 'is guided by erroneous legal principles . . . or rests upon a clearly erroneous factual finding.'" *Chikvashvili*, 859 F.3d at 292 (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)).

Of course, expert testimony must be "the product of reliable principles or methods," Fed. R. Evid. 702(c), and, as part of its gatekeeping function, a district court must ensure that expert testimony is both sufficiently relevant and reliable, *see Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021). But the district court nonetheless retains "broad discretion 'to determine reliability in light of the particular facts and circumstances of the particular case.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999) (Scalia, J., concurring)). And, as the record before us demonstrates, a witness who relies on his experience may be qualified to testify as an expert witness when the witness can explain how his experience leads to the conclusion reached, why his experience provides a sufficient basis for his opinion, and how his experience reliably is applied to the facts. *See, e.g.*, *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007); *see also* Fed. R. Evid. 702, advisory committee note ("[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.").

13

Both Varela and Niehaus had substantial experience in conducting retail crime investigations. Considering this extensive experience, each expert's description detailing how he investigated a case, and each expert's explanation describing how he identified a fencing operation, we conclude that the district court did not abuse its discretion in permitting this testimony.[2] *See, e.g.*, *United States v. Garcia*, 752 F.3d 382, 391 (4th Cir. 2014) (concluding that the expert's accepted methodology, although "not as coherent as we might wish," "passes muster" under the "deferential standard of review applicable" to the district court's reliability determination).

ii.

Vladimirov argues for the first time on appeal that the district court erred by failing to implement appropriate safeguards when Varela and Niehaus testified as dual fact and expert witnesses. We reject this argument under our plain error standard of review. *See Olano*, 507 U.S. at 732–34.

Because dual-role testimony creates a risk of juror confusion, or a risk that a juror will give undue weight to lay testimony, we previously have outlined a non-exhaustive list of safeguards that a district court may employ when a witness testifies as both a fact and an expert witness. *United States v. Smith*, 919 F.3d 825, 837 (4th Cir. 2019); *United States v. Baptiste*, 596 F.3d 214, 224 (4th Cir. 2010). But we also have explained that none of these particular safeguards is "necessary" or "per se sufficient," and that "[t]he ultimate

---

[2] Because Vladimirov failed to timely object to Niehaus's expert testimony at trial, ordinarily we would review his challenge to the reliability of Niehaus's testimony for plain error. We do not do so here, however, because we already reject Vladimirov's challenge under the less deferential abuse-of-discretion standard.

question is whether, considering the safeguards used, the testimony's 'probative value is substantially outweighed' by the risk of jury confusion or unfair prejudice." *Smith*, 919 F.3d at 837 (quoting Fed. R. Evid. 403).

Here, both the district court and the government took steps to mitigate potential harm from Varela's and Niehaus's dual-role testimony. The government established a foundation for Varela's and Niehaus's expertise when it questioned each witness, and the district court gave Vladimirov an opportunity to cross-examine Varela and Niehaus regarding the witnesses' qualifications.

Vladimirov later declined the district court's offer to have the jury instructed on the difference between expert and fact testimony after each dual witness testified. And, with Vladimirov's agreement, the court instructed the jury at the end of the government's case on the differences between expert and fact testimony. The government also grounded at least some of its questions on the witnesses' expertise, requesting an opinion from each "based on [his] training and experience." We have upheld the implementation of a similar degree of safeguards. *United States v. Galloway*, 749 F.3d 238, 245–46 (4th Cir. 2014). Accordingly, after balancing "the need for factual context for [the expert's] opinions and the risk in blending expert and factual testimony," we do not find plain error in the present case. *Smith*, 919 F.3d at 838.

## D.

Finally, Vladimirov appeals the district court's denial of his motions for judgment of acquittal under Federal Rule of Criminal Procedure 29. We review the district court's rulings de novo and will uphold the verdict if there is substantial evidence, when construed

in the light most favorable to the government, supporting the verdict. *United States v. Zelaya*, 908 F.3d 920, 925 (4th Cir. 2018). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Gillion*, 704 F.3d 284, 294 (4th Cir. 2012) (quoting *United States v. Palacios*, 677 F.3d 234, 248 (4th Cir. 2012)).

i.

We begin by addressing the three arguments Vladimirov raises regarding his conviction for conspiracy to commit money laundering. First, he contends that there was no evidence that an agreement or understanding to commit money laundering was formed. Second, he contends that the government did not show that the transactions involved proceeds from an unlawful activity, namely, wire fraud, mail fraud, or transporting stolen property. Third, Vladimirov argues that the government did not show that Vladimirov knew that the property involved in the transactions represented proceeds from felonious activities. We disagree with these arguments.

To obtain a conviction for conspiracy to commit money laundering under 18 U.S.C. § 1956(h), the government must prove:

> (1) the existence of an agreement between two or more persons to commit one or more of the substantive money laundering offenses . . . ; (2) that the defendant knew that the money laundering proceeds had been derived from an illegal activity; and (3) the defendant knowingly and voluntarily became part of the conspiracy.

*United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010). For the first requirement, a "tacit or mutual understanding" will suffice. *United States v. Ellis*, 121 F.3d 908, 922 (4th Cir. 1997) (citation omitted). An individual who does not have full knowledge of all the

16

details of a conspiracy nevertheless may be convicted of conspiracy if he understands the conspiracy's unlawful nature and "willfully joins in the plan on one occasion." *United States v. Seigler*, 990 F.3d 331, 337 (4th Cir. 2021) (citation omitted).

Here, the evidence showed that, for years, Vladimirov purchased numerous goods from boosters for well-below market value, sold the goods to unsuspecting purchasers on eBay, shipped the purchased items to those buyers, transferred the proceeds from the sales to his bank account, and, to complete and continue the cycle, withdrew cash from his account to purchase more goods from the boosters. Considering the "continuing relationships and repeated transactions" between Vladimirov and the boosters, the boosters' testimony regarding their sales to and interactions with Vladimirov, and Varela's and Niehaus's testimony regarding both fencing operations and their fact-based investigations of Vladimirov's conduct, we conclude that substantial evidence supports the jury's finding of a tacit agreement. *See United States v. Hackley*, 662 F.3d 671, 679–81 (4th Cir. 2011), *as corrected* (Dec. 20, 2011) (citation omitted).

Vladimirov's second and third arguments also fail because they are premised on a requirement that does not exist, namely, that the government prove the elements of the crime underlying the conspiracy. Although Vladimirov charges that the government failed to show that the bank transfers involved "proceeds of a specified unlawful activity" or that Vladimirov knew that the property involved represented proceeds from an activity that constituted a felony under the promotion money laundering statute, 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(c)(1), (7), "the prosecution was not required to prove that [Vladimirov] had committed promotion money laundering in order to convict [him] of

17

conspiring to do so." *United States v. Alerre*, 430 F.3d 681, 694 (4th Cir. 2005). Thus, on the extensive record before us, we hold that substantial evidence supports Vladimirov's conviction for conspiracy to commit money laundering.

ii.

With regard to his three money laundering convictions, Vladimirov argues that the government has failed to show that any of the $150,000 bank transfers included at least $10,000 in criminally derived funds. 18 U.S.C. § 1957(a) (prohibiting an individual from knowingly engaging "in a monetary transaction in criminally derived property of a value *greater than $10,000* and is derived from specified unlawful activity" (emphasis added)). We disagree with Vladimirov's contention.

To satisfy the $10,000 threshold under § 1957(a), the government is not required to show "that no 'untainted' funds were involved, [n]or that the funds used in the transaction were exclusively derived from the specified unlawful activity." *United States v. Moore*, 27 F.3d 969, 976 (4th Cir. 1994). Because legitimate and illegitimate funds "cannot be traced to a particular source" once they have been commingled, in such a situation we may presume that "transacted funds, at least up to the full amount originally derived from crime, were the proceeds of the criminal activity." *Id.* at 977.

Our review of the record does not reveal how much money, if any, Vladimirov earned from legitimate sales. However, the record affirmatively shows that in the years leading up to the bank transfers, Vladimirov did not make any *lawful* purchases from boosters of items that he later sold on eBay, that he relied on eBay as his sole source of income, that he transferred $300,000 in eBay proceeds into his City National Bank account,

18

and that he regularly withdrew cash from his City National Bank account to purchase more stolen goods from the boosters. Between June 7, 2019 and July 15, 2019 alone, a period of about five weeks, Vladimirov deposited from his PayPal account into his City National Bank account $24,969.40 and withdrew from his City National Bank account $7,000 in cash. Vladimirov repeated this pattern of deposits and withdrawals from late 2017 until mid-2019, while buying hundreds of new-in-box goods from the boosters for prices far below their value on eBay. Construing this evidence in the light most favorable to the government, we have no difficulty concluding that substantial evidence supports the jury's finding that at least $10,000 of each bank transfer constituted criminally derived property.[3]

## III.

For these reasons, we reject Vladimirov's constitutional and evidentiary challenges, and we affirm the district court's denial of his Rule 29 motions. Accordingly, we affirm the district court's judgment.

*AFFIRMED*

---

[3] We have reviewed Vladimirov's remaining arguments on appeal and conclude that they have no merit.